```
1   WARREN METLITZKY (CA Bar No. 220758)
    CONRAD | METLITZKY | KANE LLP
2   217 Leidesdorff Street
    San Francisco, CA 94111
3   Tel:    (415) 343-7100
    Fax:    (415) 343-7101
4   Email: wmetlitzky@conmetkane.com

5   BETH A. STEWART (pro hac vice)
    DAVID RANDALL J. RISKIN (pro hac vice)
6   WILLIAMS & CONNOLLY LLP
    680 Maine Ave., S.W.
7   Washington, DC 20024
    Tel:    (202) 434-5000
8   Fax:    (202) 434-5029
    Email:  bstewart@wc.com
9   Email:  driskin@wc.com

10  Attorneys for Lyft, Inc.
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| MARIBETH STENCEL,<br><br>Plaintiff<br><br>v.<br><br>LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No. 4:24-cv-01535-JSW<br><br>**LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(b)(6), 9(b)]**<br><br>Complaint filed:   March 13, 2024<br><br>Date:   August 9, 2024<br>Time:  9:00 AM<br>Place:  Zoom Video Conference into Oakland Courthouse Courtroom 5, 2nd Floor<br><br>Judge:  Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ............................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

ALLEGATIONS ............................................................................................................................ 3

ARGUMENT ................................................................................................................................. 4

I.  PLAINTIFF'S COMMON-CARRIER AND VICARIOUS-LIABILITY THEORIES FAIL UNDER GOVERNING ARIZONA LAW ............................................................. 4

    A.    Lyft Is Not Subject to Heightened Tort Duties. ............................................ 5

    B.    Lyft Is Not Vicariously Liable for the Driver's Alleged Criminal Conduct................. 6

II.  THE NEGLIGENT HIRING, RETENTION, AND SUPERVISION; INTENTIONAL AND NEGLIGENT MISREPRESENTATION; AND CONTRACT CLAIMS FAIL ........... 9

    A.    The Negligent Hiring, Retention, and Supervision Claim Cannot Proceed. ............... 9

    B.    Plaintiff Has Not Alleged Any Actionable Misrepresentations. ............................... 11

    C.    Plaintiff Has Not Alleged Any Contract or Breach. .................................................. 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ahern v. Apple Inc.*, 411 F. Supp. 3d 541 (N.D. Cal. 2019) ............................................................... 13

*Arno v. Club Med Inc.*, 22 F.3d 1464 (9th Cir. 1994) ..................................................................... 4, 5

*BHPH Capital LLC v. JV Wholesalers LLC*, 2023 WL 5932801 (D. Ariz. Sept. 12, 2023) ....... 13, 14

*Brackett v. American Airlines Group Inc.*, 2021 WL 3514012 (N.D. Cal. Aug. 10, 2021) ........ 13, 14

*Brown v. Bank of America, N.A.*, 2018 WL 6164288 (C.D. Cal. Aug. 2, 2018) ............................... 13

*Cassirer v. Thyssen-Bornemisza Collection Foundation*, 89 F.4th 1226 (9th Cir. 2024) ............... 4, 5

*Cavalier v. Speedway, LLC*, 2024 WL 1363413 (N.D. Ill. Mar. 29, 2024) ........................................ 10

*Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156 (N.D. Cal. 2021) ......................................... 12, 13

*Doe 1 v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016) ......................................... 10

*Euwema v. Osceloa County*, 2021 WL 2823448 (M.D. Fla. Apr. 12, 2021) ...................................... 10

*Frame v. Cal-W. Reconveyance Corp.*, 2011 WL 3876012 (D. Ariz. Sept. 2, 2011) ......................... 12

*Fusco v. Uber Technologies, Inc.*, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ............................... 10

*Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985 (D. Ariz. 2021) ................................. 13

*Hernandez v. Singh*, 2019 WL 367994 (D. Ariz. Jan. 30, 2019) .......................................................... 9

*In re Lyft Inc. Securities Litigation*, 484 F. Supp. 3d 758 (N.D. Cal. 2020) ..................................... 13

*Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042 (D. Ariz. 2021) ................................................. 9, 10

*Lomingkit v. Apollo Education Group Inc.*, 275 F. Supp. 3d 1139 (D. Ariz. 2017) .......................... 13

*Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013 (D. Ariz. 2011) ....................................................... 7

*Moreno v. Minnesota Life Insurance Co.*, 2015 WL 1457419 (D. Ariz. Mar. 30, 2015) .................. 12

*Muse Brands, LLC v. Gentil*, 2015 WL 4572975 (N.D. Cal. July 29, 2015) ..................................... 12

*Rendon v. Circle K Stores, Inc.*, 2020 WL 6562345 (D. Ariz. Nov. 9, 2020) ..................................... 7

*Watchman-Moore v. United States*, 2018 WL 4522925 (D. Ariz. Apr. 13, 2018),
    *report and recommendation adopted* 2018 WL 3083848 (D. Ariz. June 22, 2018) ................ 9

*Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................ 13

*Young v. Arizona Summit Law School LLC*, 2018 WL 11470870 (D. Ariz. June 12, 2018) ............. 12

**STATE CASES**

*Adams v. New York City Transit Authority*, 666 N.E.2d 216 (N.Y. 1996) ........................................... 8

*Arizona Department of Administration v. Schallock*, 941 P.2d 1275 (Ariz. 1997) ............................ 7

*Bethel v. New York City Transit Authority*, 703 N.E.2d 1214 (N.Y. 1998).......................................... 8

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021)................................................................................ 9

*Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85 (N.Y. App. Div. 2023).............................................................. 7

*Burmakova v. Uber Technologies, Inc.*,
    2021 Cal. Super. LEXIS 96610 (Super. Ct. L.A. Cnty. Oct. 22, 2021)............................... 6, 7

*Cansino v. Bank of America*, 224 Cal. App. 4th 1462 (2014) ............................................... 11, 12, 13

*Castro v. Budget Rent-A-Car System, Inc.*, 154 Cal. App. 4th 1162 (2007) ....................................... 5

*Chen v. Los Angeles Truck Centers, LLC*, 42 Cal. App. 5th 488 (2019)............................................. 5

*Doe v. Capital Cities*, 50 Cal. App. 4th 1038 (1996)................................................................. 9, 10, 11

*Doe v. Lyft, Inc.*, 176 N.E.3d 863 (Ill. App. Ct. 2020) ......................................................................... 7

*Doe v. Lyft, Inc.*, No. RG19015895 (Cal. Super. Ct. Alameda Cnty. Oct. 2, 2019) .......................... 11

*Doe v. Roman Catholic Church of the Diocese of Phoenix*,
    533 P.3d 214 (Ariz. Ct. App. 2023)..............................................................................*passim*

*Engler v. Golf Interstate Engineering, Inc.*, 280 P.3d 599 (Ariz. 2012) ............................................. 6

*Flores v. Lyft, Inc.*, No. 23STCV03373 (Cal. Super. Ct. L.A. Cnty. May 18, 2023) ........................ 10

*Ft. Lowell-NSS Ltd. Partnership v. Kelly*, 800 P.2d 962 (Ariz. 1990) ............................................... 8

*Gonzalez v. Sierras*, No. 20STCV22103 (Cal. Super. Ct. L.A. Cnty. Apr. 29, 2021)....................... 11

*Hernandez v. Burger*, 102 Cal. App. 3d 795 (1980).......................................................................... 5

*Juarez v. Boy Scouts of America, Inc.*, 81 Cal. App. 4th 377 (2000) ................................................. 9

*Law v. Sidney*, 53 P.2d 64 (Ariz. 1936) ........................................................................................... 13

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291 (1995) ................................... 6

*Lomingkit v. Apollo Education Group Inc.*, 275 F. Supp. 3d 1139 (D. Ariz. 2017) .............................

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010)..................................................................... 5

*Nunez v. Professional Transit Management of Tucson, Inc.*, 271 P.3d 1104 (Ariz. 2012) ......... 4, 5, 8

*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157 (1978).................................................... 5

*Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556 (1996) .......................................... 9

*Smith v. American Express Travel Related Services Co.*, 876 P.2d 1166 (Ariz. Ct. App. 1994) ........ 6

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ................................................................................ 8

*Textron v. Travelers Casualty & Surety Co.*, 45 Cal. App. 5th 733 (2020) .......................................... 9

*Tindell v. Murphy*, 22 Cal. App. 5th 1239 (2018) ................................................................................ 12

*Trejo v. Lyft, Inc.*, No. 22STCV21762 (Cal. Super. Ct. L.A. Cnty. Dec. 2, 2022) ............................ 11

*Ward v. Lyft, Inc.*, No. 21STCV42831 (Cal. Super. Ct. L.A. Cnty. July 19, 2023) .......................... 10

*Z.V. v. County of Riverside*, 238 Cal. App. 4th 889 (2015) ................................................................ 10

### STATUTES & RULES

California Civil Code § 2100 ................................................................................................................. 5

California Public Utilities Code § 5354 ........................................................................................ 6, 8, 9

California Public Utilities Code § 5431 ................................................................................................. 8

Federal Rule of Civil Procedure 9 ......................................................................................................... 1

Federal Rule of Civil Procedure 12 ....................................................................................................... 1

### OTHER AUTHORITIES

Restatement (Second) of Agency § 213 (American Law Institute 1958) ............................................. 9

Restatement (Third) of Agency § 7.07 (American Law Institute 2006) ............................................... 6

Restatement (Third) of Agency § 7.08 (American Law Institute 2006) ............................................... 8

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on August 9, 2024 at 9:00 AM, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California via Zoom video conference into Courtroom 5 on the 2nd Floor of the United States Courthouse, 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, Lyft, Inc. will present a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

The Court should dismiss the following claims and theories with prejudice for the reasons detailed below:  negligent hiring, retention, and supervision (Claim 2); intentional misrepresentation (Claim 5); negligent misrepresentation (Claim 6); breach of contract (Claim 8); vicarious liability (Compl. (Mar. 13, 2024) [ECF 1], ¶¶ 213–53); and the allegation that Lyft is subject to heightened tort duties (Compl. ¶¶ 74–75, 133, 141, 143–44).

Lyft's motion is based on this notice, the memorandum of points and authorities below, and the accompanying declaration of Warren Metlitzky and exhibits thereto.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should dismiss with prejudice for failure to state a claim Plaintiff's claims and theories alleging negligent hiring, retention, and supervision; intentional misrepresentation; negligent misrepresentation; breach of contract; vicarious liability; and heightened tort duties.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Founded in 2012, Lyft became the first U.S. company to establish a peer-to-peer, on-demand transportation network—what the world now knows as "ridesharing." Lyft's network, accessible through a digital application, created a marketplace enabling people seeking transportation to match with people providing rides. Lyft, in effect, modernized and expanded the transportation call center, building a platform that allowed people providing rides to connect with people who needed them.

Safety is, and has been, at the heart of Lyft's mission. From its inception more than a decade ago, Lyft's ridesharing network offered safety features that other transportation options did not. Every rider using the Lyft network received information, including the driver's license plate, photo, and first name, before getting in the car. Each trip produced a GPS log of the route and time, and riders had an opportunity to rate their ride and provide feedback once the ride was over.

Tens of millions of riders and millions of drivers use the Lyft network to arrange rides every year. Those rides, unfortunately, are not immune from larger societal issues. Plaintiff here alleges that on August 6, 2022 in Arizona, she took a ride arranged through the Lyft platform after a date. She says the driver pulled into a commercial parking lot as she began feeling very foggy, and she woke up the next day with bruising believing she had been sexually assaulted. That is criminal conduct by the driver if proven, but Plaintiff has not sued the driver—she instead has sued Lyft, seeking to hold it wholly liable for the driver's alleged actions. Lyft is confident Plaintiff cannot prove her claims against Lyft; this motion addresses a subset of those claims, each of which fails:

Plaintiff's theory that Lyft is subject to heightened tort duties by virtue of its supposed status as a common carrier, as well as her claims seeking to hold Lyft vicariously liable for the driver's conduct, fail under governing Arizona law. Arizona law applies because Plaintiff is a resident of Arizona and was injured by an alleged tort in Arizona. The Arizona Supreme Court has rejected the notion that common carriers are subject to heightened duties; general negligence duties control instead. Plaintiff's vicarious-liability claims founder given that criminal conduct (such as sexual battery) is outside the scope of any business relationship between Lyft and drivers on the platform.

Plaintiff's causes of action for negligent hiring, retention, and supervision; misrepresentation; and breach of contract are each meritless under both California and Arizona law—which are not

substantively different as to these claims. To support a negligent hiring, retention, or supervision claim, a plaintiff must allege a "red flag" that would have put a principal on notice the agent in question had a propensity to engage in the specific alleged wrongdoing. Plaintiff does not allege this required element. The misrepresentation theories fail for multiple reasons, including because Plaintiff cites no actionable misrepresentation on which she relied. Her general allegations about Lyft's commitment to safety—and the snippets of unsourced material in her complaint—are insufficient to satisfy her burden, and non-actionable. The contract claim cannot stand because she has not alleged any particular contract between her and Lyft, nor identified any specific breach.

## ALLEGATIONS

Plaintiff asserts that on August 6, 2022, she requested a ride on the Lyft platform following a date in Arizona. (Compl. ¶¶ 9, 58.) She says that during the ride, she "was livestreaming on her phone" until the driver "requested that she stop." (Compl. ¶ 59.) Plaintiff recalls that she and the driver had "very little conversation" but that she talked about her date, at which point the driver allegedly "reached back to touch her hand"—which she interpreted as "an offer of comfort." (Compl. ¶ 60.) Plaintiff says she then "began feeling very foggy" but remembers the driver "pulling into a commercial parking lot for no apparent reason and leaning his seat back." (Compl. ¶ 60.)

Plaintiff alleges she woke up the next day "half inside her doorway to her children trying to wake her." (Compl. ¶ 61.) She asserts that her "belongings were strewn across the front lawn and her phone was missing"; her "knees and legs were scraped and bloody"; "she had bruises on her hips and buttocks"; and her dress "had a stain." (Compl. ¶ 61.) Plaintiff says she received a SANE exam at the hospital; that she reported the incident to the police, who she gave her dress and CCTV footage from the parking lot; and that the "investigation is ongoing." (Compl. ¶ 63). She also reported the incident to Lyft, who informed her it suspended the driver. (Compl. ¶ 64.)

Plaintiff filed suit on March 13, 2024, alleging "serious harm … as a result of the wrongful acts and omissions of" Lyft (Compl. ¶ 57)—including being "traumatized by" the assault (Compl. ¶ 65). Eleven of the complaint's 264 paragraphs specifically address Plaintiff's alleged incident; the remainder deploy general allegations about Lyft.

The complaint brings twelve claims, which fall into several categories:

- Negligence: general (Claim 1); hiring, retention, and supervision (Claim 2); common carrier (Claim 3); failure to warn (Claim 4); infliction of emotional distress (Claim 7).
- Fraud: intentional misrepresentation (Claim 5); negligent misrepresentation (Claim 6).
- Contract: breach of contract (Claim 8).
- Strict products liability: design defect (Claim 9); failure to warn (Claim 10).
- Vicarious liability: for the "driver's torts" and "sexual battery" (Compl. ¶¶ 213–53).

## ARGUMENT

### I.   PLAINTIFF'S COMMON-CARRIER AND VICARIOUS-LIABILITY THEORIES FAIL UNDER GOVERNING ARIZONA LAW

Arizona law forecloses any theory that Lyft is subject to heightened tort duties as a common carrier (Compl. ¶¶ 74–75, 133, 141, 143–44); general "reasonable-care" principles apply, *Nunez v. Pro. Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1108–09 (Ariz. 2012). The Court should dismiss Plaintiff's heightened-duty allegations and treat the specific common-carrier-negligence claim (Claim 3) as duplicative of Plaintiff's general-negligence claim (thus dismissing it). Plaintiff's vicarious-liability theories (Compl. ¶¶ 213–53) fail primarily because the driver's alleged conduct is outside the scope of any employment.[1]

\* \* \* \* \*

When a district court hears state-law claims in diversity, the forum state's choice-of-law principles determine the governing law. *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). Here, because Arizona-resident Plaintiff brought her action in a California court against a California company alleging an incident in Arizona, California's choice-of-law test selects between California and Arizona law. Under California's "governmental-interest" test, the Court determines whether the potentially-applicable laws are different and, if so, asks which state has the greater interest in having its law applied. *See, e.g.*, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1234 (9th Cir. 2024). Applying that test here compels application of Arizona law.

Regarding Plaintiff's common-carrier theory, the applicable standard of care is different under Arizona and California law. Whereas under the former a "general negligence standard"

---

[1] Drivers on the Lyft platform are independent contractors, but Lyft need not argue that status to prevail here; reserving its rights, Lyft does not argue the employee-contractor distinction here.

requiring "reasonable care" applies, *Nunez*, 271 P.3d at 1108–09, under the latter, a common carrier "must use the utmost care and diligence," Cal. Civ. Code § 2100.  In light of this difference, Arizona's predominant governmental interest controls, rendering Arizona law applicable.  *See Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.").  After all, when a plaintiff is a resident of a foreign state and was injured by a tort in that state, the foreign state has the greater interest in setting the contours of defendant's liability.  *See, e.g.*, *Cassirer*, 89 F.4th at 1239–43 (favoring foreign state's "strong interest in establishing a reliable rule of law to promote predictability, to allow actors operating within the jurisdiction's borders reasonably to rely on the jurisdiction's law, and to facilitate investment by entities operating within the jurisdiction" (quotation omitted)); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98–101 (2010) (same); *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180–82 (2007) (same); *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 168 (1978) (same); *see also Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 497–98, 502 (2019) (favoring foreign state's interests to "obtain tax and other revenue" and "advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies").

Regarding vicarious liability, insofar as there are differences between California and Arizona law, Arizona law applies:  Arizona has the predominant interest in policing activity within its borders and "reliably defining the duties and scope of liability of an employer doing business within its borders."  *Arno*, 22 F.3d at 1468.

**A.  Lyft Is Not Subject to Heightened Tort Duties.**

Based on Lyft's alleged common-carrier status,[2] Plaintiff asserts that Lyft owed the "utmost" or "highest degree of care" to riders on the Lyft platform.  (Compl. ¶¶ 74–75, 133, 141, 143–44.)  There are no heightened duties for common carriers in Arizona:  "the appropriate standard of care … is the objective, reasonable person standard in traditional negligence law."  *Nunez*, 271 P.3d at 1109.  That forecloses any heightened-duty theories and renders Plaintiff's specific common-carrier-negligence claim duplicative of the general-negligence claim (warranting its dismissal).

---

[2] Lyft disputes it would meet the definition of a common carrier under either Arizona or California law, but the Court need not decide that issue to address Lyft's dismissal argument.

B.   **Lyft Is Not Vicariously Liable for the Driver's Alleged Criminal Conduct.**

Plaintiff deploys three theories of vicarious liability: (i) *respondeat superior*; (ii) apparent agency; and (iii) under California Public Utilities Code § 5354. None have merit.

1.   ***Plaintiff's assertion that the driver engaged in criminal conduct—sexual battery—forecloses* respondeat superior.** An employer is liable for the tortious conduct of an employee in *respondent superior* only where the employee "was acting within the course and scope of his employment." *Doe v. Roman Cath. Church of the Diocese of Phx.*, 533 P.3d 214, 222 (Ariz. Ct. App. 2023) (quotation omitted). Thus, when the employee engages in conduct not motivated "to serve any purpose of the employer" or that "represents a departure from, not an escalation of, conduct involved in performing [the] assigned work," *respondeat superior* liability is unavailable. Restatement (Third) Agency § 7.07 & cmt. b; *see Engler v. Golf Interstate Eng'g, Inc.*, 280 P.3d 599, 602–03 (Ariz. 2012) (Arizona courts follow § 7.07).

Joining with "[m]ost courts that have considered the question," Arizona courts have found that sexual misconduct is "not within the scope of employment" and thus not a basis for *respondeat superior* liability. *Smith v. Am. Express Travel Related Servs. Co.*, 876 P.2d 1166, 1171 (Ariz. Ct. App. 1994); *accord Doe v. Roman Cath. Church*, 533 P.3d at 222 (noting the "majority of courts" have refused to hold churches vicariously liable for sex abuse on scope-of-employment grounds). In explaining this conclusion, *Smith*, for example, detailed that sexual harassment was not "expressly or impliedly authorized as part of" the employee's responsibilities, nor was it "reasonably contemplated as being necessarily or probably incidental to [the] employment." 876 P.2d at 1171; *accord Doe v. Roman Cath. Church*, 533 P.3d at 222 (applying "same reasoning"). The same rule and reasoning govern in California, *see, e.g.*, *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 299–306 (1995), and they foreclose *respondeat superior* here. There is no connection between a driver's role of taking a rider from place to place on the one hand, and engaging in alleged sexual misconduct on the other. Any sexual battery, if proven, was "committed solely to further [the driver's] own personal interests." *Smith*, 876 P.2d at 1171. Consistent with this conclusion, courts throughout the country have dismissed substantively-similar *respondeat superior* theories against transportation-network companies like Uber and Lyft. *See, e.g., Burmakova v. Uber Techs., Inc.*,

2021 Cal. Super. LEXIS 96610, at *3–4 (Cal. Super. Ct., L.A. Cnty. Oct. 22, 2021); *Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85, 87–88 (N.Y. App. Div. 2023); *cf. Doe v. Lyft, Inc.*, 176 N.E.3d 863, 870 (Ill. App. Ct. 2020) (outside the scope of employment not contested). So too here.

Although there is no *per se* rule in Arizona holding alleged sexual misconduct outside the scope of employment, the line of cases allowing *respondeat superior* claims where that is the underlying tort are inapplicable, including because they arise in circumstances of "longstanding abuse and harassment in the workplace by a manager with authority." *Doe v. Roman Cath. Church*, 533 P.3d at 223. That, of course, is not what Plaintiff here alleges. In the progenitor of this line, *Arizona Department of Administration v. Schallock*, the scope-of-employment finding rested on a manager's "egregious" sexual misconduct towards subordinates "for close to a decade" (including rape following a rebuffed promise of employment benefits), of which the employer knew but "did little or nothing to call a halt." 941 P.2d 1275, 1282 (Ariz. 1997). Given these (and other) predicate facts, which "distinguishe[d] the case from the great majority of cases involving torts committed by a servant against either a non-employee or co-employee," the court found the manager's "conduct … incidental to his position and authority" and thus a basis for concluding it was within the course and scope of his employment. *Id.* Subsequent cases following *Schallock* (including those permitting *respondeat superior* claims involving sexual misconduct) have emphasized the unique manager-subordinate relationship animating it. *See, e.g.*, *Rendon v. Circle K Stores, Inc.*, 2020 WL 6562345, at *4 (D. Ariz. Nov. 9, 2020) (claim survived dismissal where employer "ha[d] received complaints of sexual harassment against [store manager] in the past and ha[d] done nothing to curb his behavior"); *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1022–23 & n.4 (D. Ariz. 2011) (court assumed without deciding sexual harassment by "supervisor" was "in the scope and course of his employment"). Because Plaintiff's *respondeat superior* theory does not arise in a supervisory employment context, *Schallock* and its progeny are inapplicable.

The driver's alleged sexual misconduct was outside the scope of any employment, foreclosing *respondeat superior* liability. Perhaps recognizing this, Plaintiff also says *respondeat superior* is available "whether or not [the] conduct occurred in the course and scope of employment" because "Lyft has a non-delegable duty to transport its passengers safely," including by virtue of its

7

supposed common-carrier status.  (Compl. ¶¶ 233–37.)  That is not Arizona law.  Non-delegable duties arise where a defendant "is under a higher duty to some class of persons." *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962, 967 (Ariz. 1990).  Although that may have once been true for common carriers in Arizona, *see Nunez*, 271 P.3d at 1107, it no longer is, *id.* at 1108–09, and thus the non-delegable-duty doctrine, and any related argument that a scope-of-employment limitation is inapplicable, have no purchase here.  Underscoring this conclusion is the fact New York courts, which also eliminated the higher duty of care for common carriers—the New York decision so holding *Nunez* found "persuasive," 271 P.3d at 1109 (citing *Bethel v. N.Y.C. Transit Auth.*, 703 N.E.2d 1214 (N.Y. 1998))—also retain a scope-of-employment limitation for vicarious claims against common carriers, *Adams v. N.Y.C. Transit Auth.*, 666 N.E.2d 216, 220 (N.Y. 1996).

> ***2.     Apparent agency (Compl. ¶¶ 240–46) is unavailable because it too has a "scope-of-employment" limitation.***  Apparent agency "rarely serves as a basis for liability when an employee or agent commits an intentional physical tort."  Restatement (Third) of Agency § 7.08 reporter's n.b; *see Ft. Lowell*, 800 P.2d at 968 (Arizona courts "usually" apply the Restatement "[a]bsent Arizona law to the contrary").  That is because there must be "a close link between an agent's tortious conduct and the agent's apparent authority," and "only in unusual circumstances" would a plaintiff believe an agent "acted with actual authority" in committing a physical tort (like sexual battery).  Restatement (Third) of Agency § 7.08 cmt. b.  This is not one of those "unusual circumstances," and it is hard to see how a plaintiff ever could believe a principal authorized an agent to commit sexual battery.  Nor has she alleged any such belief here.  Apparent agency does save vicarious liability.

> ***3.     Plaintiff's California statutory theory is meritless.***  Plaintiff says Lyft is vicariously liable under California Public Utilities Code § 5354 as well.  (Compl. ¶¶ 214–18.)  But Arizona law applies to Plaintiff's vicarious-liability claim, and a California statute does not regulate conduct in Arizona.  *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206–09 (2011) (applying presumption against extraterritoriality); *see also* Cal. Pub. Util. Code § 5431(c) (applying to transportation-network companies "operating in California").  Nor, in all events, does § 5354 purport to create a general vicarious-liability scheme; rather, it is limited to vicarious claims arising from "construing and enforcing the provisions of th[e] chapter relating to the prescribed privileges and obligations of

the holder of a permit." None of the "prescribed privileges and obligations" is the subject of Plaintiff's vicarious-liability theory here.

## II. THE NEGLIGENT HIRING, RETENTION, AND SUPERVISION; INTENTIONAL AND NEGLIGENT MISREPRESENTATION; AND CONTRACT CLAIMS FAIL

Plaintiff cannot proceed on her claims for negligent hiring, retention, and supervision (Claim 2); intentional and negligent misrepresentation (Claims 5 & 6); or breach of contract (Claim 8) under either California or Arizona law. Because these states' laws do not differ with respect to the issues Lyft's arguments address, California's choice-of-law rules favor "its own rules of decision." *Textron v. Travelers Cas. & Sur. Co.*, 45 Cal. App. 5th 733, 755 (2020) (quotation omitted).

### A. The Negligent Hiring, Retention, and Supervision Claim Cannot Proceed.

Whether based in hiring, retention, or supervision, Plaintiff's cause of action requires her to plead, among other things, that Lyft knew or should have known a reason the driver *himself* was likely to cause the specific type of harm alleged. *See Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395, 397 (2000), *disapproved of on other grounds by Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021); *Hernandez v. Singh*, 2019 WL 367994, at *6 (D. Ariz. Jan. 30, 2019) (claims require the "employer antecedently had reason to believe that an undue risk of harm would exist because of the employment" (quotation omitted)); *see also Doe v. Roman Cath. Church*, 533 P.3d at 219–20 (must know of specific type of harm alleged); *Watchman-Moore v. United States*, 2018 WL 4522925, at *7 (D. Ariz. Apr. 13, 2018), *report and recommendation adopted* 2018 WL 3083848 (D. Ariz. June 22, 2018) (dismissing for failure to allege antecedent knowledge, among other things). In other words, a plaintiff must establish the principal "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996); *accord* Restatement (Second) of Agency § 213 cmt. d ("The employer is subject to liability only for such harm as is within the risk [known to the employer].") (quoted and applied in *Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042, 1079–81 (D. Ariz. 2021)).

This "red-flag" requirement is strict, and it requires that the tortfeasor at issue have a history of the same misconduct alleged by the plaintiff that was known (or available to) the employer. For example, in California, claims against a church for hiring a pastor who molested a child failed

where, even presuming the church had learned of the pastor's prior sexual affairs with adults, there was nothing to put the church on notice that he "would commit sexual crimes on a minor." *Roman Cath. Bishop v. Superior Ct.*, 42 Cal. App. 4th 1556, 1564–68 (1996); *see also Capital Cities*, 50 Cal. App. 4th at 1054–55. The same is true in Arizona, where a priest's past "involvement in a sexual relationship with another consenting adult" did not "bear on any risk he may have posed to children" and thus could not support a negligent hiring, retention, or supervision claim. *Doe v. Roman Cath. Church*, 533 P.3d at 220. And *Leibel* rejected a negligent-supervision claim in part because there was no evidence showing the employer "knew or should have known" an officer would have used excessive force against a disabled individual, although the officer had "grabbed and wrestled an individual to the ground and deployed a chemical agent to the subject's face" at least six years earlier. 556 F. Supp. 3d at 1080–81 (internal quotation marks and alterations omitted).

Case after case across the country is in accord, rejecting negligent hiring, retention, and supervision claims where, as here, the plaintiff cannot show the tortfeasor's history mirrors the alleged misconduct. *See, e.g.*, *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015); *Cavalier v. Speedway, LLC*, 2024 WL 1363413, at *8–9 (N.D. Ill. Mar. 29, 2024) (no claim where employee had mistreated coworkers, but had no history of spitting into a customer's food); *Euwema v. Osceloa Cnty.*, 2021 WL 2823448, at *4 (M.D. Fla. Apr. 12, 2021) (dismissing because firefighter's alleged "gross negligence and misconduct during training events" was not a red flag he would "intentionally let Plaintiffs' house burn down because he disliked Plaintiffs"). Courts have dismissed these claims against transportation-network companies, including Lyft, at the pleading stage where the plaintiff failed to identify "anything" in a driver's background suggesting a propensity to cause the alleged harm. *Doe 1 v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 789 (N.D. Cal. 2016); *accord Fusco v. Uber Techs., Inc.*, 2018 WL 3618232, at *5 (E.D. Pa. July 27, 2018) ("Although Plaintiff alleges that a reasonable employer in Defendant's position would have conducted additional screening before hiring the driver, this allegation does not state a claim for negligent hiring unless it is further alleged that a more thorough screening process would have uncovered signs of [the alleged] behavior.").[3]

---

[3] *See also, e.g.*, Ex. A (*Ward v. Lyft, Inc.*, No. 21STCV42831 (Cal. Super. Ct., L.A. Cnty. July 19, 2023)); Ex. B (*Flores v. Lyft, Inc.*, No. 23STCV03373 (Cal. Super., Ct. L.A. Cnty. May 18, 2023));

To proceed on her negligent hiring, retention, and supervision claim, Plaintiff would have to plead the driver previously had engaged in conduct that specifically put Lyft on notice (or would have put Lyft on notice had it known about it) that he was likely to engage in sexual battery. *Capital Cities*, 50 Cal. App. 4th at 1054–55; *Doe v. Roman Cath. Church*, 533 P.3d at 219–21. Any allegation of prior behavior short of that (such as, by way of example, rudeness or improper flirtatiousness) would be insufficient. Plaintiff has not alleged the required "red flag," the absence of which forecloses her negligent hiring, retention, and supervision claim.

Plaintiff's abstract allegations about the purported deficiencies in Lyft's background-check process or driver education (Compl. ¶¶ 87–88, 92) cannot forestall dismissal. Changes of the type Plaintiff argues Lyft should have implemented are irrelevant unless they would have revealed that this driver "created a particular risk" of the harm Plaintiff alleges. *Capital Cities*, 50 Cal. App. 4th at 1054; *see also Doe v. Roman Cath. Church*, 533 P.3d at 219–21. Here, Plaintiff makes no allegations that any supposed change in Lyft's processes would have put Lyft on notice of any particular risk with respect to the at-issue driver. Without any causal connection between Plaintiff's alleged injuries and the purported deficiencies, Plaintiff's theory boils down to the contention that because Lyft supposedly could have done more, it was legally required to do so. That runs headlong into California and Arizona courts' repeated admonition that a negligent hiring, supervision, and retention claim only survives where the employer knew of and ignored, or failed to discover, evidence of the specific employee's propensity to engage in the misconduct alleged.

**B.    Plaintiff Has Not Alleged Any Actionable Misrepresentations.**

In support of her claims for intentional and negligent misrepresentation, Plaintiff identifies two sets of statements: (i) a pair of blog posts from 2015 and 2016 (Compl. ¶ 43); and (ii) unidentified instances where Lyft "actively markets itself as a safe company that provides safe rides" (Compl. ¶¶ 78, 80–81, 162, 174). She has not alleged a misrepresentation claim based on either.

To prevail on a claim of intentional misrepresentation under either California or Arizona law, a plaintiff must establish: "(1) misrepresentation, (2) knowledge of falsity, (3) intent to induce

---

Ex. C (*Trejo v. Lyft, Inc.*, No. 22STCV21762 (Cal. Super. Ct., L.A. Cnty. Dec. 2, 2022)); Ex. D (*Gonzalez v. Sierras*, No. 20STCV22103 (Cal. Super. Ct., L.A. Cnty. Apr. 29, 2021)); Ex. E (*Doe v. Lyft, Inc.*, No. RG19015895 (Cal. Super. Ct., Alameda Cnty. Oct. 2, 2019)).

reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014); *accord Frame v. Cal-W. Reconveyance Corp.*, 2011 WL 3876012, at *4 (D. Ariz. Sept. 2, 2011). Negligent misrepresentation has similar elements, but it requires the absence of "reasonable ground for believing" the misrepresentation to be true, instead of "knowledge of falsity." *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (2018); *accord Young v. Ariz. Summit L. Sch. LLC*, 2018 WL 11470870, at *2 (D. Ariz. June 12, 2018).

***Blog posts:*** Plaintiff never alleges the statements in the two posts were false, or that Lyft believed (or lacked a reasonable ground for believing) them to be false. *See, e.g., Muse Brands, LLC v. Gentil*, 2015 WL 4572975, at *4–6 (N.D. Cal. July 29, 2015) (dismissing intentional- and negligent-misrepresentation claims where plaintiff did not allege falsity or a lack of reasonable belief); *Young*, 2018 WL 11470870, at *3–4 (same). Nor does Plaintiff even say she saw either post (or even visited a Lyft blog), much less that she relied on either in taking her August 2022 ride through the Lyft platform. *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1178, 1183–84 (N.D. Cal. 2021) (dismissing intentional- and negligent-misrepresentation claims for lack of reliance); *see Moreno v. Minn. Life Ins. Co.*, 2015 WL 1457419, at *8 (D. Ariz. Mar. 30, 2015) (dismissing negligent-misrepresentation and fraudulent-concealment claims where plaintiff did not allege she saw or relied on misstatement). (Reliance would be difficult for her to plausibly allege, given the posts were from at least six years before the at-issue ride.) These pleading deficiencies foreclose any misrepresentation claim based on the blog posts.

***General statements about safety:*** Plaintiff's allegations regarding the general, unidentified statements about safety are similarly deficient. The complaint does not say where these statements came from, their context, or even what the statements actually were. Rather, Plaintiff only asserts that "periodic emails … social media advertisements, and Lyft's … website and app" (Compl. ¶ 164) "cultivate[d]" a "safe image" that "suggests to customers, including Plaintiff, that riding while intoxicated with Lyft is safe." (Compl. ¶ 85; *see also* Compl. ¶¶ 78, 162, 164, 174.)

Plaintiff's failure to identify any specific misstatement is fatal to her general-safety-statement claims: Without identifying a particular alleged misrepresentation, she can plead none of the

required elements of her claims. *See Brown v. Bank of Am., N.A.*, 2018 WL 6164288, at *3 (C.D. Cal. Aug. 2, 2018) (intentional and negligent misrepresentation); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) (same); *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 (D. Ariz. 2012) (same under Arizona law). And in all events, vague, general statements about safety of the type to which Plaintiff points cannot support a misrepresentation claim. Alleged false statements must "pertain to past or existing material facts," *Cansino*, 224 Cal. App. 4th at 1469, *Law v. Sidney*, 53 P.2d 64, 66 (Ariz. 1936), and must be "amenable to general verification or falsification," *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 557 (N.D. Cal. 2019) (quotation omitted); *see also Lomingkit v. Apollo Educ. Grp. Inc.*, 275 F. Supp. 3d 1139, 1157 (D. Ariz. 2017) ("generalized, vague, and unspecific assertions[]" are "mere 'puffery'" (quotation omitted)). General opinions that safety is, for example, "important" or "a top priority" do not surmount these hurdles. *See In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 770–71 (N.D. Cal. 2020) ("Lyft's statements regarding its commitment to safety" were not actionable because they "did not state that Lyft guaranteed safety, but instead emphasized its belief in the importance of trust and safety and its commitment to both."); *accord Cork*, 534 F. Supp. 3d at 1177 (statement that community residents experienced "a sense of security" was not actionable misrepresentation, but merely "vague or highly subjective" puffery); *Lomingkit*, 275 F. Supp. 3d at 1157 ("The Ninth Circuit has further recognized that phrases like … 'high priority[]' … are puffery because they are vague and subjective.").

For multiple reasons, then, Plaintiff's misrepresentation claims fail.

**C.     Plaintiff Has Not Alleged Any Contract or Breach.**

Plaintiff asserts, in four spare paragraphs, that she entered into an unspecified contract for "safe and reasonable transportation," and that Lyft breached unspecified terms. (Compl. ¶¶ 192–95.) This boilerplate states no cognizable claim under California or Arizona law.

To proceed on a breach-of-contract claim, a plaintiff must plead, among other things, "the specific provisions in the contract creating the obligation the defendant is said to have breached." *Brackett v. Am. Airlines Grp. Inc.*, 2021 WL 3514012, at *2 (N.D. Cal. Aug. 10, 2021) (quotation omitted); *accord BHPH Cap. LLC v. JV Wholesalers LLC*, 2023 WL 5932801, at *4 (D. Ariz. Sept. 12, 2023). Plaintiff has not done so. *See Brackett*, 2021 WL 3514012, at *2 (dismissing because

13

"Plaintiff fails to identify the contractual terms that were allegedly breached"); *BHPH*, 2023 WL 5932801, at *3–4 (same).  Nor has she even said whether the allegedly breached contract was written, oral, or implied.  To be sure, she asserts the "essence" of her contract with Lyft "was the payment of a fee … in exchange for safe and reasonable transportation."  (Compl. ¶ 193.)  But this does not say anything about any specific provision breached.

## CONCLUSION

For the reasons detailed above, the Court should dismiss with prejudice for failure to state a claim Plaintiff's claims and theories alleging negligent hiring, retention, and supervision; intentional misrepresentation; negligent misrepresentation; breach of contract; vicarious liability; and heightened tort duties (and thus the common-carrier negligence claim as duplicative).

| | | |
|---|---|---|
| 1 | Dated: June 7, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | By: */s/ Warren Metlitzky* |
| 4 | | Warren Metlitzky (CA Bar No. 220758)<br>CONRAD | METLITZKY | KANE LLP |
| 5 | | 217 Leidesdorff Street<br>San Francisco, CA 94111 |
| 6 | | Tel:   (415) 343-7100<br>Fax:   (415) 343-7101 |
| 7 | | Email: wmetlitzky@conmetkane.com |
| 8 | | Beth Stewart (*pro hac vice*)<br>David Randall J. Riskin (*pro hac vice*) |
| 9 | | WILLIAMS & CONNOLLY LLP<br>680 Maine Ave., S.W. |
| 10 | | Washington, DC 20024<br>Tel:   (202) 434-5000 |
| 11 | | Fax:   (202) 434-5029<br>Email:  bstewart@wc.com |
| 12 | | Email:  driskin@wc.com |
| 13 | | *Attorneys for Lyft, Inc.* |