1  WARREN METLITZKY (CA Bar No. 220758)
   CONRAD | METLITZKY | KANE LLP
2  217 Leidesdorff Street
   San Francisco, CA 94111
3  Tel:  (415) 343-7100
   Fax:  (415) 343-7101
4  Email: wmetlitzky@conmetkane.com

5  BETH A. STEWART (*pro hac vice*)
   DAVID RANDALL J. RISKIN (*pro hac vice*)
6  WILLIAMS & CONNOLLY LLP
   680 Maine Ave., S.W.
7  Washington, DC 20024
   Tel:  (202) 434-5000
8  Fax:  (202) 434-5029
   Email:  bstewart@wc.com
9  Email:  driskin@wc.com

10 *Attorneys for Lyft, Inc.*

11

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14                        **SAN FRANCISCO DIVISION**

15

16                                              Case No. 3:24-cv-01535-MMC

17 MARIBETH STENCEL,                            **LYFT, INC.'S NOTICE OF MOTION AND**
                                                **MOTION TO DISMISS FIRST**
18              Plaintiff                        **AMENDED COMPLAINT;**
                                                **MEMORANDUM OF POINTS AND**
19                                              **AUTHORITIES**

20      v.                                      **[Fed. R. Civ. P. 12(b)(1) & (6), 9(b)]**

21 LYFT, INC., a DELAWARE CORPORATION; AND      Complaint amended:   June 21, 2024
   DOES 1 THROUGH 50, INCLUSIVE,
22                                              Date:   September 13, 2024
                Defendants.                     Time:   9:00 AM
23                                              Place:  San Francisco Courthouse
                                                        Courtroom 7, 19th Floor
24
                                                Judge:  Hon. Maxine M. Chesney
25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 2

ALLEGATIONS ...................................................................................................................................... 3

ARGUMENT ........................................................................................................................................... 4

I.    PLAINTIFF'S COMMON-CARRIER AND VICARIOUS-LIABILITY THEORIES
FAIL UNDER GOVERNING ARIZONA LAW ...................................................................... 4

    A.    Lyft Is Not Subject to Heightened Tort Duties............................................................ 6

    B.    Lyft Is Not Vicariously Liable for the Driver's Alleged Criminal Conduct.............. 6

II.    THE NEGLIGENT HIRING, RETENTION, AND SUPERVISION;
MISREPRESENTATION; AND CONTRACT CLAIMS FAIL ......................................... 10

    A.    The Negligent Hiring, Retention, and Supervision Claim Cannot Proceed. ............ 11

    B.    Plaintiff's Copy-Paste Misrepresentation Allegations Are Meritless....................... 13

    C.    Plaintiff Has Not Alleged Any Contract or Breach. .................................................. 16

III.    PLAINTIFF'S STATUTORY UNFAIR-COMPETITION CLAIM FAILS ........................ 16

CONCLUSION..................................................................................................................................... 18

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Ahern v. Apple Inc.*, 411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................ 13, 15

4

*Arno v. Club Med Inc.*, 22 F.3d 1464 (9th Cir. 1994) ..................................................... 5, 6

5

*BHPH Capital LLC v. JV Wholesalers LLC*, 2023 WL 5932801 (D. Ariz. Sept. 12, 2023) ............. 16

6

*Brackett v. American Airlines Group Inc.*, 2021 WL 3514012 (N.D. Cal. Aug. 10, 2021) .............. 16

7

*Brown v. Bank of America, N.A.*, 2018 WL 6164288 (C.D. Cal. Aug. 2, 2018) .............................. 14

8

*Cassirer v. Thyssen-Bornemisza Collection Foundation*, 89 F.4th 1226 (9th Cir. 2024) .................. 5

9

*Cavalier v. Speedway, LLC*, 2024 WL 1363413 (N.D. Ill. Mar. 29, 2024) .................................... 12

10

*Chamberlain v. Neumann*, 2019 WL 2716961 (D. Ariz. June 28, 2019) ........................................... 7

11

*Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156 (N.D. Cal. 2021) ........................................ 14, 15

12

*Deitz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ......................................... 17

13

*Doe 1 v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016) ..................................... 12

14

*Doe v. Match.com*, 789 F. Supp. 2d 1197 (C.D. Cal. 2011) ......................................................... 17

15

*Euwema v. Osceloa County*, 2021 WL 2823448 (M.D. Fla. Apr. 12, 2021) .................................... 12

16

*Frame v. Cal-Western Reconveyance Corp.*, 2011 WL 3876012 (D. Ariz. Sept. 2, 2011) .............. 13

17

*Fusco v. Uber Technologies, Inc.*, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ............................ 12

18

*Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985 (D. Ariz. 2021) ......................... 13, 14

19

*Hall v. Sea World Entertainment, Inc.*, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) .................... 14

20

*Hernandez v. Singh*, 2019 WL 367994 (D. Ariz. Jan. 30, 2019) ................................................... 11

21

*Hutton v. McDaniel*, 264 F. Supp. 3d 996 (D. Ariz. 2017) ......................................................... 15

22

*In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988) ...................................... 10

23

*In re Lyft Inc. Securities Litigation*, 484 F. Supp. 3d 758 (N.D. Cal. 2020) ................................ 14

24

*In re New Investments, Inc.*, 840 F.3d 1137 (9th Cir. 2016) ...................................................... 10

25

*James Erickson Family Partnership v. Transamerica Life Insurance Co.*,

26

    2019 WL 4673337 (D. Ariz. Sept. 25, 2019) ......................................................................... 16

27

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ......................................................... 13

28

*Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042 (D. Ariz. 2021) ............................................ 11, 12

*Lomingkit v. Apollo Education Group Inc.*, 275 F. Supp. 3d 1139 (D. Ariz. 2017)......................... 14

*Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013 (D. Ariz. 2011)...................................................... 8

*Lopez-Camou v. I-Flow Corp.*, 2010 WL 11515204 (D. Ariz. Apr. 15, 2010) ................................ 15

Dismissal Op., *Means v. Lyft, Inc.*, No. 3:24-cv-177 (N.D. Cal. June 13, 2024) [ECF 46] ....... *passim*

*Moreno v. Minnesota Life Insurance Co.*, 2015 WL 1457419 (D. Ariz. Mar. 30, 2015)............ 13, 15

*Muse Brands, LLC v. Gentil*, 2015 WL 4572975 (N.D. Cal. July 29, 2015).................................... 15

*Rendon v. Circle K Stores, Inc.*, 2020 WL 6562345 (D. Ariz. Nov. 9, 2020)  ................................. 8

*Rodriguez v. FCA US LLC*, 2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) ................................ 17, 18

*ROTFL Prods., LLC v. Gzebb*, 2013 WL 12181763 (N.D. Cal. Aug. 5, 2013)............................... 17

*Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) ......... 18

*Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894 (E.D. Cal. 2018).......................... 16

*Turrey v. Vervent, Inc.*, 2023 WL 6390620 (S.D. Cal. Sept. 29, 2023)............................................ 18

*Watchman-Moore v. United States*, 2018 WL 4522925 (D. Ariz. Apr. 13, 2018), *report and
        recommendation adopted* 2018 WL 3083848 (D. Ariz. June 22, 2018)............................... 11

*Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................... 14

**STATE CASES**

*Adams v. New York City Transit Authority*, 666 N.E.2d 216 (N.Y. 1996)  ......................................... 9

*Arizona Department of Administration v. Schallock*, 941 P.2d 1275 (Ariz. 1997) ...................... 7, 8

*Bethel v. New York City Transit Authority*, 703 N.E.2d 1214 (N.Y. 1998)...................................... 9

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) ....................................................................... 11

*Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85 (N.Y. App. Div. 2023)........................................................... 7

*Burmakova v. Uber Technologies, Inc.*,
        2021 WL 12277049 (Super. Ct. L.A. Cnty. Oct. 22, 2021)....................................................... 7

*Cansino v. Bank of America*, 224 Cal. App. 4th 1462 (2014) .................................................... 13, 14

*Castro v. Budget Rent-A-Car System, Inc.*, 154 Cal. App. 4th 1162 (2007) .................................... 5

*Chen v. Los Angeles Truck Centers, LLC*, 42 Cal. App. 5th 488 (2019)...................................... 5, 6

*Doe v. Capital Cities*, 50 Cal. App. 4th 1038 (1996)................................................................. 11, 12

*Doe v. Lyft, Inc.*, 176 N.E.3d 863 (Ill. App. Ct. 2020) ....................................................................... 7

*Doe v. Roman Catholic Church of the Diocese of Phoenix*,

    533 P.3d 214 (Ariz. Ct. App. 2023) ................................................................ *passim*

*Engler v. Golf Interstate Engineering, Inc.*, 280 P.3d 599 (Ariz. 2012) ............................................. 6

*Ft. Lowell-NSS Ltd. Partnership v. Kelly*, 800 P.2d 962 (Ariz. 1990) ............................................. 8, 9

*Hernandez v. Burger*, 102 Cal. App. 3d 795 (1980) ............................................. 5

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ............................................. 14

*Juarez v. Boy Scouts of America, Inc.*, 81 Cal. App. 4th 377 (2000) ............................................. 11

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010) ............................................. 5

*Nunez v. Professional Transit Management of Tucson, Inc.*, 271 P.3d 1104 (Ariz. 2012) ........ *passim*

*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157 (1978) ............................................. 5

*Phoenix Western Holding Corp. v. Gleeson*, 500 P.2d 320 (Ariz. App. 1972) ............................................. 9

*Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556 (1996) ............................................. 11

*San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893 (1996) ............................................. 18

*Smith v. American Express Travel Related Services Co.*,

    876 P.2d 1166 (Ariz. Ct. App. 1994) ............................................. 7, 9

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ............................................. 10

*Textron v. Travelers Casualty & Surety Co.*, 45 Cal. App. 5th 733 (2020) ............................................. 11

*Z.V. v. County of Riverside*, 238 Cal. App. 4th 889 (2015) ............................................. 12

**STATUTES & RULES**

California Business & Professions Code § 17200 ............................................. 16

California Civil Code § 2100 ............................................. 5

California Public Utilities Code § 1759 ............................................. 18

California Public Utilities Code § 5354 ............................................. 6, 10

California Public Utilities Code § 5431 ............................................. 10

Federal Rule of Civil Procedure 9 ............................................. 1, 13

Federal Rule of Civil Procedure 11 ............................................. 17

Federal Rule of Civil Procedure 12 ............................................. 1

1

**OTHER AUTHORITIES**

2 Restatement (Second) of Agency § 213 (American Law Institute 1958)......................................... 11

3 Restatement (Third) of Agency § 4.01 (American Law Institute 2006).............................................. 9

4 Restatement (Third) of Agency § 7.07 (American Law Institute 2006).............................................. 6

5 Restatement (Third) of Agency § 7.08 (American Law Institute 2006).............................................. 9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

2       PLEASE TAKE NOTICE that on September 13, 2024 at 9:00 AM, or as soon thereafter as the

3  matter may be heard, in the United States District Court for the Northern District of California in

4  Courtroom 7 on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San

5  Francisco, California 94102, before the Honorable Maxine M. Chesney, Lyft, Inc. will present a

6  motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6) and 9(b).

7       The Court should dismiss the following claims and theories for the reasons detailed below:

8  negligent hiring, retention, and supervision (found in Claim 1); misrepresentation (Claim 2) with

9  prejudice; common-carrier negligence (Claim 5) and the related allegation that Lyft is subject to

10 heightened tort duties (Am. Compl. (June 21, 2024) [ECF 26], ¶¶ 151(l), 153(o) & (p), 225)) with

11 prejudice; vicarious liability (Claim 7) with prejudice in part; breach of contract (Claim 8); and

12 violation of California's unfair-competition statute (Claim 10) with prejudice.

13      Lyft's motion is based on this notice and the memorandum of points and authorities below.

14

**STATEMENT OF ISSUES TO BE DECIDED**

15      Whether the Court should dismiss Plaintiff's claims and theories alleging negligent hiring,

16 retention, and supervision; misrepresentation; common-carrier negligence and related heightened tort

17 duties; vicarious liability; breach of contract; and unfair competition.

18

19

20

21

22

23

24

25

26

27

28

1

### MEMORANDUM OF POINTS AND AUTHORITIES

The Court has seen Plaintiff's amended complaint before—it repeats, largely *verbatim*, the amended complaint in the related action *Means v. Lyft, Inc.*, down to alleging the same claims (using the same words) the Court dismissed in that action.[1]  That may not seem surprising (after all, Plaintiffs' counsel is the same in both actions), but it is significant:  Plaintiff filed her amended complaint a week *after* the Court decided *Means*, yet she changed nothing the Court dismissed.  (That this action was then pending before a different judge is little explanation, particularly when Plaintiff had sought to relate this action to *Means*.)  Thus, for example, Plaintiff here asserts misrepresentation theories resting on the same allegations the Court found in *Means* were "too vague" and did not "plead an actionable affirmative misrepresentation."  (*Means* Dismissal 16–17.)

*Means* is a roadmap and template for dismissal on each of the claims at issue in this motion.

\* \* \* \* \*

Tens of millions of riders and millions of drivers use the Lyft network to arrange rides every year.  Those rides, unfortunately, are not immune from larger societal issues.  Plaintiff here alleges that on August 6, 2022 in Arizona, she took a ride arranged through the Lyft platform after a date.  She says the driver pulled into a commercial parking lot as she began feeling very foggy, and she woke up the next day with bruising, believing she had been sexually assaulted.  That is criminal conduct by the driver if proven, but Plaintiff has not sued the driver—she instead has sued Lyft, seeking to hold it wholly liable for the driver's alleged actions.  Lyft is confident Plaintiff cannot prove her claims against Lyft; this motion addresses a subset of those claims, each of which fails:

Plaintiff's theory that Lyft is subject to heightened tort duties by virtue of its supposed status as a common carrier and her claims seeking to hold Lyft vicariously liable for the driver's conduct fail under governing Arizona law.  Arizona law applies because Plaintiff is a resident of Arizona and was injured by an alleged tort in Arizona.  The Arizona Supreme Court has rejected the notion that common carriers are subject to heightened duties; general negligence duties control instead.  Plaintiff's vicarious-liability claims founder given that criminal conduct (such as sexual battery) is outside the scope of any business relationship between Lyft and drivers on the platform.

---

[1] Dismissal Op., *Means v. Lyft, Inc.*, No. 3:24-cv-177 (N.D. Cal. June 13, 2024) [ECF 46].

Plaintiff's causes of action for negligent hiring, retention, and supervision; misrepresentation; and breach of contract each are meritless under both California and Arizona law—which are not materially different as to these claims.  To support a negligent hiring, retention, or supervision claim, a plaintiff must allege a "red flag" that would have put a principal on notice the agent in question had a propensity to engage in the specific alleged wrongdoing.  Plaintiff does not allege this element.  On misrepresentation, Plaintiff deploys the same allegations the Court already has found are not actionable.  And her contract claim cannot stand because she has not alleged any particular contract between her and Lyft, nor identified any specific breach.

Plaintiff also asserts a California statutory unfair-competition claim, but supports it with nothing more than a bare recitation of its elements, which is a dispositive pleading failure.  The claim otherwise founders at the threshold because Plaintiff has not established her standing or the Court's equitable jurisdiction.

## ALLEGATIONS

Plaintiff, an Arizona resident, requested a ride through the Lyft platform after a date on August 6, 2022 in Arizona.  (Am. Compl. ¶¶ 9, 134.)  She says that during the ride, she "was livestreaming on her phone" until the driver asked that she stop.  (Am. Compl. ¶ 135.)  Plaintiff remembers "very little conversation" during the ride, although she believes they talked about her date, at which point the driver allegedly "reached back to touch her hand"—which she interpreted as "an offer of comfort."  (Am. Compl. ¶ 136.)  Plaintiff alleges that she "began feeling very foggy" but recalls the driver "pulling into a commercial parking lot for no apparent reason and leaning his seat back."  (Am. Compl. ¶ 136.)

She asserts that she woke up the next day "half inside her doorway to her children trying to wake her."  (Am. Compl. ¶ 137.)  Her "belongings were strewn across the front lawn and her phone was missing"; her "knees and legs were scraped and bloody"; "she had bruises on her hips and buttocks"; and her dress "had a stain."  (Am. Compl. ¶ 137.)  Plaintiff says she received a SANE exam at the hospital; that she reported the incident to the police, who she gave her dress and CCTV footage from the parking lot; and that the "investigation is ongoing."  (Am. Compl. ¶ 139.)  She also reported the incident to Lyft, which informed her that it suspended the driver.  (Am. Compl. ¶ 140.)

Plaintiff filed suit on March 13, 2024, and then amended her complaint in response to Lyft's motion to dismiss. Plaintiff "brings this civil action against Lyft to recover damages" (Am. Compl. ¶ 8), alleging "serious harm … as a result of the wrongful acts and omissions of" Lyft (Am. Compl. ¶ 133), including being "traumatized by" the assault (Am. Compl. ¶ 141). Eleven of the complaint's 324 paragraphs specifically address Plaintiff's alleged incident; the remainder deploy general allegations about Lyft. The complaint's ten counts fall into several categories:

- Negligence: general, including hiring, retention, and supervision (Claim 1); failure to warn (Claim 3); infliction of emotional distress (Claim 4); common carrier (Claim 5); nondelegable duties (Claim 6).
- Fraud: misrepresentation (Claim 2).
- Vicarious liability: *respondeat superior*, apparent agency, ratification, and California Public Utilities Code § 5354 (Claim 7).
- Contract: breach of contract (Claim 8).
- Strict products liability: failure to warn and design defect (Claim 9).
- Violation of California's unfair-competition statute (Claim 10).

ARGUMENT

## I. PLAINTIFF'S COMMON-CARRIER AND VICARIOUS-LIABILITY THEORIES FAIL UNDER GOVERNING ARIZONA LAW

Arizona law forecloses any theory that Lyft is subject to heightened tort duties as a common carrier (Claim 5; Am. Compl. ¶¶ 151(l), 153(o) & (p), 225 (alleging common-carrier status or duties)); general "reasonable care" principles apply, *Nunez v. Pro. Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1108–09 (Ariz. 2012). The Court should dismiss Plaintiff's heightened-duty allegations and treat the specific common-carrier-negligence claim (Claim 5) as duplicative of Plaintiff's general-negligence claim, thus dismissing it. Plaintiff's vicarious-liability theories (Claim 7) fail primarily because the driver's alleged conduct is outside the scope of any employment.[2]

* * * * *

As the Court detailed in *Means*, when a district court hears state-law claims in diversity, the

---

[2] Drivers on the Lyft platform are independent contractors, but Lyft need not argue that status to prevail here; reserving its rights, Lyft does not argue the employee-contractor distinction.

4

forum state's choice-of-law principles determine the governing law.  (*Means* Dismissal 3); *see also Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994).  Here, because Arizona-resident Plaintiff brought her action in a California court against a California company alleging an incident in Arizona, California's "governmental-interest" choice-of-law test selects between California and Arizona law.  That test asks whether the potentially-applicable laws are different and, if so, which state's interests would be most impaired were its law not applied.  (*Means* Dismissal 4); *see also, e.g.*, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1234 (9th Cir. 2024).

Here, as to Plaintiff's common-carrier and vicarious-liability theories, there are differences between Arizona and California law.  Arizona law applies to Plaintiff's tort claims for the same reasons the Court found Florida law applied in *Means*.  (*Means* Dismissal 8–10, 14.)

Regarding Plaintiff's common-carrier theory, the applicable standard of care is different under the competing laws.  Whereas in Arizona a "general negligence standard" requiring "reasonable care" applies to common carriers, *Nunez*, 271 P.3d at 1105, 1108–09, under California law, a common carrier "must use the utmost care and diligence," Cal. Civ. Code § 2100, a higher standard.  (Prior to 2012 and until *Nunez*, Arizona courts suggested that common carriers were subject to a heightened duty of care, akin to California's current standard.  *Nunez*, 271 P.3d at 1106–07.)  In light of this difference, Arizona's predominant governmental interest controls, rendering Arizona law applicable.  (*Means* Dismissal 8–10); *see Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.").  After all, when a plaintiff is a resident of a foreign state and was injured by a tort in that state, the foreign state has the greater interest in setting the contours of defendant's liability.  (*Means* Dismissal 8–10); *see also, e.g.*, *Cassirer*, 89 F.4th at 1239–43; *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 497–98, 502 (2019); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98–101 (2010) (same); *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180–82 (2007) (same); *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 169 (1978) (same).  California's interest in applying its law to these questions is only "hypothetical" in this circumstance.  (*Means* Dismissal 9–10 (quotation omitted).)

Regarding vicarious liability, insofar as there are differences between Arizona and California

law (and the Court's *Means* decision suggests it would find a difference at least as to *respondeat superior*), Arizona vicarious-liability law would apply for the same reason: "when 'the injured persons are not California residents and were not injured in California,'" California's interest in applying its law is "'more hypothetical than real.'" (*Means* Dismissal 10 (quoting *Chen*, 42 Cal. App. 5th at 498)); *see also Means* Dismissal 14 (discussing vicarious liability).) Arizona has the predominant interest in policing activity within its borders and "reliably defining the duties and scope of liability of an employer doing business within its borders." *Arno*, 22 F.3d at 1468.

### A.    Lyft Is Not Subject to Heightened Tort Duties.

Based on Lyft's alleged common-carrier status,[3] Plaintiff says Lyft owed the "utmost" or "highest degree of care" to riders on the Lyft platform. (Claim 5; Am. Compl. ¶¶ 151(l), 153(o) & (p), 225.) But that is not the standard of care for common carriers in Arizona; the "appropriate standard" is "the objective, reasonable person standard in traditional negligence law." *Nunez*, 271 P.3d at 1109. That forecloses any heightened-duty theories and renders Plaintiff's common-carrier-negligence claim duplicative of the general-negligence claim—warranting dismissal with prejudice of the heightened-duty theory and the claim.

### B.    Lyft Is Not Vicariously Liable for the Driver's Alleged Criminal Conduct.

Plaintiff deploys four theories of vicarious liability: (i) *respondeat superior*; (ii) apparent agency; (iii) ratification; and (iv) California Public Utilities Code § 5354. None have merit.

### 1.    Plaintiff's assertion that the driver engaged in criminal conduct—sexual battery—*forecloses* respondeat superior.

An employer is liable for the tortious conduct of an employee in *respondent superior* only where the employee "was acting within the course and scope of his employment." *Doe v. Roman Cath. Church of the Diocese of Phx.*, 533 P.3d 214, 222 (Ariz. Ct. App. 2023) (quotation omitted). Thus, when the employee engages in conduct not motivated "to serve any purpose of the employer" or that "represents a departure from, not an escalation of, conduct involved in performing [the] assigned work," *respondeat superior* liability is unavailable. Restatement (Third) of Agency § 7.07 & cmt. b; *see Engler v. Golf Interstate Eng'g, Inc.*, 280 P.3d 599, 602–03 (Ariz. 2012) (Arizona courts follow § 7.07).

---

[3] Lyft disputes it would meet the definition of a common carrier under either Arizona or California law, but the Court need not decide that issue to address Lyft's dismissal argument.

Joining with "[m]ost courts that have considered the question," Arizona courts have found that sexual misconduct generally is "not within the scope of employment" and thus not a basis for *respondeat superior* liability. *Smith v. Am. Express Travel Related Servs. Co.*, 876 P.2d 1166, 1171 (Ariz. Ct. App. 1994); *accord Doe v. Roman Cath. Church*, 533 P.3d at 223 (noting the "majority of courts" have refused to hold churches vicariously liable for sex abuse on scope-of-employment grounds). In explaining this conclusion, *Smith* detailed that sexual harassment was not "expressly or impliedly authorized as part of" the employee's responsibilities, nor was it "reasonably contemplated as being necessarily or probably incidental to [the] employment." 876 P.2d at 1171; *accord Doe v. Roman Cath. Church*, 533 P.3d at 222 (applying "same reasoning"). There is no connection between a driver's role of taking a rider from place to place on the one hand, and engaging in alleged sexual misconduct on the other. Any sexual battery, if proven, was "committed solely to further [the driver's] own personal interests." *Smith*, 876 P.2d at 1171; *accord Chamberlain v. Neumann*, 2019 WL 2716961, at *3 (D. Ariz. June 28, 2019). Consistent with this conclusion, courts throughout the country have dismissed substantively-similar *respondeat superior* theories against transportation-network companies like Uber and Lyft. *See, e.g.*, *Burmakova v. Uber Techs., Inc.*, 2021 WL 12277049, at *1–2 (Cal. Super. Ct., L.A. Cnty. Oct. 22, 2021); *Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85, 87–88 (N.Y. App. Div. 2023); *cf. Doe v. Lyft, Inc.*, 176 N.E.3d 863, 870 (Ill. App. Ct. 2020) (scope of employment not contested). So too here, and with prejudice.

Although there is not an absolute bar in Arizona holding alleged sexual misconduct outside the scope of employment, the line of cases allowing *respondeat superior* claims where that misconduct is the underlying tort is inapplicable, including because the cases rest on "longstanding abuse and harassment in the workplace by a manager with authority" against a subordinate employee. *Doe v. Roman Cath. Church*, 533 P.3d at 223. That, of course, is not what Plaintiff alleges. In the progenitor of this line, *Arizona Department of Administration v. Schallock*, the scope-of-employment finding arose from a manager's "egregious" sexual misconduct towards subordinates "for close to a decade" (including rape following a rebuffed promise of employment benefits), of which the employer knew but "did little or nothing to call a halt." 941 P.2d 1275, 1282 (Ariz. 1997). Given these (and other) predicate facts, which "distinguishe[d] the case from the great majority of

1   cases involving torts committed by a servant against either a non-employee or co-employee," the

2   court found the manager's "conduct … incidental to his position and authority" and thus a basis for

3   concluding it was within the course and scope of his employment. *Id.* at 1282, 1284.

4          Subsequent cases in Arizona following *Schallock* and permitting *respondeat superior* claims

5   involving sexual misconduct have emphasized the unique manager-subordinate relationship

6   animating *Schallock*—and at issue in those subsequent actions. *See, e.g.*, *Rendon v. Circle K Stores,*

7   *Inc.*, 2020 WL 6562345, at *4 (D. Ariz. Nov. 9, 2020) (claim survived dismissal where employer

8   "ha[d] received complaints of sexual harassment against [store manager] in the past" by employees,

9   but "ha[d] done nothing to curb his behavior"); *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013,

10  1022–23 & n.4 (D. Ariz. 2011) (court assumed without deciding sexual harassment by "supervisor"

11  against subordinate was "in the scope and course of his employment"). *See generally Doe v. Roman*

12  *Cath. Church*, 533 P.3d at 223–24 ("*Schallock* is narrowly applicable to cases involving

13  longstanding abuse and harassment in the workplace by a manager with authority to hire and fire,

14  promote and demote, and instruct and control subordinates the manager victimizes." (quotation and

15  alteration omitted)).  That predicate circumstance (among others) is absent here.  Because Plaintiff's

16  *respondeat superior* theory does not arise in a supervisory-employment context, *Schallock* and its

17  progeny are inapplicable.  Instead, Arizona's general rule—that *respondeat superior* does not apply

18  because sexual misconduct is outside the scope of employment—governs.

19         Perhaps recognizing this, Plaintiff says *respondeat superior* is available regardless of

20  whether the alleged "tort [was] committed within the scope of employment … because Lyft is a

21  common carrier or because the drivers' [*sic*] torts were a breach of Lyft's nondelegable duties."

22  (Am. Compl. ¶¶ 225.)  That is not Arizona law.  Non-delegable duties arise where a defendant "is

23  under a higher duty to some class of persons." *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962,

24  967 (Ariz. 1990).  Although that may have once been true for common carriers in Arizona, it no

25  longer is (and stopped being the case long before the incident alleged here), *see Nunez*, 271 P.3d at

26  1106–09, and thus the non-delegable-duty doctrine, and any related argument that a scope-of-

27  employment limitation is inapplicable, have no purchase.  Notably, New York courts, which also

28  eliminated a heightened duty of care for common carriers, retain a scope-of-employment limitation

8

1    for vicarious claims against common carriers. *Adams v. N.Y.C. Transit Auth.*, 666 N.E.2d 216, 220

2    (N.Y. 1996). *Nunez* found "persuasive" the New York case rejecting a heightened duty for common

3    carriers, 271 P.3d at 1109 (citing *Bethel v. N.Y.C. Transit Auth.*, 703 N.E.2d 1214 (N.Y. 1998)),

4    underscoring why a scope-of-employment limitation would apply in Arizona as well.

5        *2.    Apparent agency (Am. Compl. ¶¶ 226–33) is unavailable because it too has a*

6    *"scope-of-employment" limitation.*  Apparent agency "rarely serves as a basis for liability when an

7    employee or agent commits an intentional physical tort."  Restatement (Third) of Agency § 7.08

8    reporter's n.b; *see Ft. Lowell*, 800 P.2d at 968 (Arizona courts "usually" apply the Restatement

9    "[a]bsent Arizona law to the contrary").  That is because there must be "a close link between an

10   agent's tortious conduct and the agent's apparent authority," and "only in unusual circumstances"

11   would a plaintiff believe an agent "acted with actual authority" in committing a physical tort (like

12   sexual battery).  Restatement (Third) of Agency § 7.08 cmt. b.  It is hard to see how a plaintiff ever

13   could believe a principal authorized an agent to commit sexual battery.  Nor has Plaintiff alleged any

14   such belief here (a pleading failure that independently forecloses her argument).  Apparent agency

15   cannot save vicarious liability.

16       *3.    Plaintiff's ratification theory (Am. Compl. ¶¶ 234–37) fails.*  Plaintiff says Lyft has

17   "failed to respond adequately" to "sexual assaults perpetrated by … drivers," which "amounts to

18   ratification."  (Am. Compl. ¶¶ 235–37.)  But ratification under Arizona law requires, among other

19   things, a "manifestation of assent to be bound by the prior act of another."  Restatement (Third) of

20   Agency § 4.01 cmt. b; *accord Phx. W. Holding Corp. v. Gleeson*, 500 P.2d 320, 326 (Ariz. App.

21   1972) (requiring "subsequent approval by a principal of a previous unauthorized act"); *see also Ft.

22   Lowell*, 800 P.2d at 968 (absent contrary precedent, Arizona usually applies the Restatement).  That

23   means Plaintiff needs to show that, by its actions, Lyft approved the specific misconduct of the

24   driver alleged here.  *See Smith*, 876 P.2d at 1172–73 (ratification requires "employer's approval of

25   the wrongful conduct").  But Plaintiff pleads no facts suggesting Lyft's approval, and her complaint

26   is inconsistent with it.  After all, she says that after she reported the incident to Lyft, "Lyft informed

27   [her] that the … driver had been suspended."  (Am. Compl. ¶ 140.)  Lyft, in other words, expressly

28   *disapproved* the unauthorized act alleged, foreclosing ratification.

Plaintiff offers that Lyft was "aware of the scope and scale of sexual assaults." (Am. Compl. ¶¶ 234–37.) This is not relevant. "[R]atification requires that a principal have full and actual knowledge of all material facts at the time he, by subsequent act or conduct, binds himself to a previously unauthorized act of an agent." *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1344 (9th Cir. 1988) (Arizona law) (quotation omitted).[4] Even if Plaintiff were correct about an alleged "scope and scale of sexual assaults," that says nothing about the particular driver or incident at issue here, and therefore it cannot inform a ratification theory. Specifics matter, and not only has Plaintiff not pleaded the required ones, but also the specifics she does allege foreclose ratification.

  ***4. Plaintiff's California statutory theory is meritless.*** Plaintiff says Lyft is vicariously liable under California Public Utilities Code § 5354 as well. (Am. Compl. ¶¶ 238–42.) Arizona law applies to Plaintiff's vicarious-liability claim, however, and a California statute does not regulate conduct in Arizona, *see Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206–09 (2011) (applying presumption against extraterritoriality); *see also* Cal. Pub. Util. Code § 5431(c) (applying to transportation-network companies "operating in California"), warranting dismissal of the theory with prejudice.[5] Nor, in all events, does § 5354 purport to create a general vicarious-liability scheme; rather, it is limited to vicarious claims arising from "construing and enforcing the provisions of th[e] chapter relating to the prescribed privileges and obligations of the holder of a permit." None of the "prescribed privileges and obligations" is the subject of Plaintiff's vicarious-liability theory here.

## II. THE NEGLIGENT HIRING, RETENTION, AND SUPERVISION; MISREPRESENTATION; AND CONTRACT CLAIMS FAIL

  Plaintiff cannot proceed on her claims for negligent hiring, retention, and supervision (embedded in Claim 1); misrepresentation (Claim 2); or breach of contract (Claim 8) under either California or Arizona law. Because these states' laws do not differ with respect to these issues,

---

[4] *Superseded by statute on other grounds* as recognized in *In re New Investments, Inc.*, 840 F.3d 1137, 1139 (9th Cir. 2016) (concerning aspect of bankruptcy law).

[5] Plaintiff in *Means*, as well as in the two other related actions, *Spano v. Lyft, Inc.* and *Hudson v. Lyft, Inc.*, brought and then abandoned this statutory vicarious-liability theory as well. (*Means* Dismissal 10 n.8 (abandoned); Pl.'s Opp. to Lyft's Mot., *Spano v. Lyft, Inc.*, No. 3:24-cv-799-MMC (N.D. Cal. June 10, 2024) [ECF 33], at 1 n.2 (conceded); Pl.'s Opp. to Lyft's Mot., *Hudson v. Lyft, Inc.*, No. 3:24-cv-1519-MMC (N.D. Cal. July 8, 2024) [ECF 36], at 1 n.2 (conceded).) The Court can question why it appears here, and why Plaintiff would include it again if it is facially meritless.

1  California's choice-of-law rules favor "its own rules of decision." *Textron Inc. v. Travelers Cas. &*
2  *Sur. Co.*, 45 Cal. App. 5th 733, 755 (2020) (quotation omitted); *see also Means* Dismissal 14–15.

3     **A.**  **The Negligent Hiring, Retention, and Supervision Claim Cannot Proceed.**

4    As the Court detailed, whether based in hiring, retention, or supervision, Plaintiff's cause of
5  action under California law requires a showing that Lyft knew or should have known a reason the
6  driver *himself* was likely to cause the specific type of harm alleged.  (*Means* Dismissal 14 (citing
7  *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395, 397 (2000), *disapproved of on other*
8  *grounds by Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021)).)  The same is true under Arizona
9  law.  *See Hernandez v. Singh*, 2019 WL 367994, at *6 (D. Ariz. Jan. 30, 2019) (claims require the
10  "employer antecedently had reason to believe that an undue risk of harm would exist because of the
11  employment" (quotation omitted)); *see also Doe v. Roman Cath. Church*, 533 P.3d at 219–20 (must
12  know of specific type of harm alleged); *Watchman-Moore v. United States*, 2018 WL 4522925, at *7
13  (D. Ariz. Apr. 13, 2018), *report and recommendation adopted*, 2018 WL 3083848 (D. Ariz. June 22,
14  2018) (dismissing for failure to allege antecedent knowledge, among other things).  A plaintiff, in
15  other words, must establish the principal "knew or should have known that hiring the employee
16  created a particular risk or hazard and that particular harm materializes."  *Doe v. Capital Cities*,
17  50 Cal. App. 4th 1038, 1054 (1996); *accord* Restatement (Second) of Agency § 213 cmt. d ("The
18  employer is subject to liability only for such harm as is within the risk [known to the employer].")
19  (quoted and applied in *Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042, 1079–81 (D. Ariz. 2021)).
20  Plaintiff has not pleaded anything about the driver's history, let alone that he "created a particular
21  risk or hazard" of sexual assault. Her negligent hiring, retention, or supervision thus fails twice over.

22    The red-flag-history requirement is strict, and it requires that the tortfeasor have a history of
23  the same misconduct alleged by the plaintiff that was known (or available to) the employer.  For
24  example, in California, claims against a church for hiring a pastor who molested a child failed
25  where, even presuming the church had learned of the pastor's prior sexual affairs with adults, there
26  was nothing to put the church on notice that he "would commit sexual crimes on a minor."  *Roman*
27  *Cath. Bishop v. Superior Ct.*, 42 Cal. App. 4th 1556, 1564–68 (1996); *see also Capital Cities*,
28  50 Cal. App. 4th at 1054–55.  The same is true in Arizona, where a priest's past "involvement in a

11

sexual relationship with another consenting adult" did not "bear on any risk he may have posed to children" and thus could not support a negligent hiring, retention, or supervision claim. *Doe v. Roman Cath. Church*, 533 P.3d at 220. And *Leibel* rejected a negligent-supervision claim in part because there was no evidence showing the employer "knew or should have known" an officer would have used excessive force against a disabled individual, although the officer had "grabbed and wrestled an individual to the ground and deployed a chemical agent to the subject's face" at least six years earlier. 556 F. Supp. 3d at 1080–81 (internal quotation marks and alterations omitted).

In *Means*, the Court dismissed the plaintiff's negligent hiring, retention, and supervision theories because the plaintiff there did "not have information ... that would allow her to allege the specific 'red flags' Lyft disregarded in the process of hiring the driver who assaulted her." (*Means* Dismissal 14 (quotation omitted).) This holding fits with case after case from across the country rejecting those theories where, as here, a plaintiff did not establish that the tortfeasor's history mirrors the alleged misconduct. *See, e.g.*, *Doe 1 v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 789 (N.D. Cal. 2016); *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902–03 (2015); *Cavalier v. Speedway, LLC*, 2024 WL 1363413, at *8–9 (N.D. Ill. Mar. 29, 2024) (no claim where employee had mistreated coworkers, but had no history of spitting into a customer's food); *Euwema v. Osceloa Cnty.*, 2021 WL 2823448, at *4 (M.D. Fla. Apr. 12, 2021) (dismissing because firefighter's alleged "gross negligence and misconduct during training events" was not a red flag he would "intentionally let Plaintiffs' house burn down because he disliked Plaintiffs"); *Fusco v. Uber Techs., Inc.*, 2018 WL 3618232, at *5 (E.D. Pa. July 27, 2018).

To proceed on her negligent hiring, retention, and supervision claim, Plaintiff would have to plead the driver previously had engaged in conduct that specifically put Lyft on notice (or would have put Lyft on notice had it known about it) that he was likely to engage in sexual battery. *Capital Cities*, 50 Cal. App. 4th at 1054–55; *Doe v. Roman Cath. Church*, 533 P.3d at 219–21. Any allegation of prior behavior short of that (such as, by way of example, rudeness or improper flirtatiousness) would be insufficient. Plaintiff has not alleged the required red flag, the absence of which forecloses her negligent hiring, retention, and supervision claim.

1

### B.    Plaintiff's Copy-Paste Misrepresentation Allegations Are Meritless.

2        As detailed, Plaintiff's misrepresentation allegations, underlying a claim for "affirmative

3   misrepresentation and misrepresentation by omission" (Am. Compl. ¶ 156), repeat *verbatim* those in

4   the *Means* amended complaint.  The Court dismissed the allegations in *Means*, finding they failed to

5   plead either "an actionable affirmative misrepresentation" or "an actionable misrepresentation by

6   omission." (*Means* Dismissal 15–17.)  That holding controls here—which should be the end of the

7   matter.  And because Plaintiff made no changes to the misrepresentation allegations despite having

8   the benefit of the *Means* dismissal order before filing her amended complaint here, the Court should

9   dismiss the misrepresentation claim with prejudice.  (That the Plaintiff in *Means* did not—and thus,

10   presumably, could not—allege additional facts to support a misrepresentation claim notwithstanding

11   the Court's invitation (*Means* Dismissal 18) underscores that this relief is warranted.)

12        In the interests of completeness, Lyft details below its dismissal arguments and demonstrates

13   that California and Arizona law are the same on the relevant points.  But the *Means* dismissal order

14   occupies the field on the misrepresentation claim, as it were, and the Court need not go any further.

15                                    * * * * *

16        Plaintiffs' theories of affirmative misrepresentation and misrepresentation by omission fail at

17   the threshold because she has not pleaded them with particularity.  Fed. R. Civ. P. 9(b).  Missing is

18   the required "who, what, when, where, and how" of the supposedly-fraudulent statements and her

19   awareness of them, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 552 (N.D. Cal. 2019); *accord Gould v.*

20   *M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 (D. Ariz. 2012).  On that latter point,

21   Plaintiff fails to "specify when [s]he was exposed to" the alleged statements and "which ones" she

22   purportedly "relied upon."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *accord*

23   *Moreno v. Minn. Life Ins. Co.*, 2015 WL 1457419, at *8 (D. Ariz. Mar. 30, 2015) (dismissing

24   negligent-misrepresentation and fraudulent-concealment claims where plaintiff did not allege she

25   saw or relied on misstatement).

26        *1.    Plaintiff's affirmative theory fails.*  Affirmative fraud requires, among other things,

27   an actionable misrepresentation and reliance.  *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469

28   (2014); *accord Frame v. Cal-W. Reconveyance Corp.*, 2011 WL 3876012, at *4 (D. Ariz. Sept. 2,

13

1   2011).  Plaintiff pleads neither.

2         Plaintiff's primary misrepresentation theory seems to be that Lyft falsely stated passenger

3   "safety is important" and its "top priority."  (Am. Compl. ¶ 132.)  But the complaint does not say

4   where these statements came from, their context, or even what they actually were.  It only says the

5   "safe image" "cultivate[d]" by Lyft "suggests to customers … that riding while intoxicated with Lyft

6   is safe."  (Am. Compl. ¶ 120.)  Plaintiff's failure to identify specific misstatements is fatal.  Without

7   identifying a particular misrepresentation, she cannot prove affirmative fraud.  *See Brown v. Bank of*

8   *Am., N.A.*, 2018 WL 6164288, at *3 (C.D. Cal. Aug. 2, 2018); *Yamauchi v. Cotterman*, 84 F. Supp.

9   3d 993, 1018–19 (N.D. Cal. 2015); *accord Gould*, 860 F. Supp. 2d at 988 (same under Arizona law).

10  The plaintiff in *Means* admitted as much, but she asserted that *In re Tobacco II Cases*, 46 Cal. 4th

11  298, 328 (2009), saved her claims.  (*Means* Dismissal 15.)  The Court correctly rejected this

12  argument because the *Tobacco II* exception is "narrow" and Plaintiff failed to allege a "similarly

13  extensive and lengthy" campaign lasting decades.  (*Means* Dismissal 15.)  That pleading failure

14  remains.  What is more, *Tobacco II* does not relieve a plaintiff from pleading at least reliance and

15  causation with Rule 9(b) specificity, *see Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *4 (S.D.

16  Cal. Dec. 23, 2015), which Plaintiff has not done, including by failing to identify *any* specific

17  statement she saw and relied on.

18        Separately, general-safety statements of the type to which Plaintiff points cannot support a

19  misrepresentation claim.  Alleged false statements must "pertain to past or existing material facts,"

20  *Cansino*, 224 Cal. App. 4th at 1469, and must be "amenable to general verification or falsification,"

21  *Ahern*, 411 F. Supp. 3d at 557 (citation omitted); *see also Lomingkit v. Apollo Educ. Grp. Inc.*,

22  275 F. Supp. 3d 1139, 1157 (D. Ariz. 2017) ("generalized, vague, and unspecific assertions" are

23  "mere 'puffery'" (quotation omitted)).  Opinions that, for example, safety is "important" or "a top

24  priority" do not surmount these hurdles.  *See In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 770–71

25  (N.D. Cal. 2020) ("Lyft's statements regarding its commitment to safety" were not actionable);

26  *accord Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1177 (N.D. Cal. 2021) (boasting "a sense

27  of security" was merely "vague or highly subjective" puffery); *Lomingkit*, 275 F. Supp. 3d at 1157

28  ("The Ninth Circuit has … recognized that phrases like … 'high priority[]' … are puffery because

14

1    they are vague and subjective.").

2          Plaintiff separately pleads two blog posts from 2015 and 2016.  (Am. Compl. ¶ 122.)  These

3    do not save her claim.  She never alleges the statements in the posts were false, or that Lyft believed

4    them to be.  *See Muse Brands, LLC v. Gentil*, 2015 WL 4572975, at *4–6 (N.D. Cal. July 29, 2015)

5    (dismissing where plaintiff did not allege falsity or a lack of belief); *Lopez-Camou v. I-Flow Corp.*,

6    2010 WL 11515204, at *5 (D. Ariz. Apr. 15, 2010) ("must set forth what is false or misleading").

7    Nor does Plaintiff say she saw either post (or even visited a Lyft blog).  *See Cork*, 534 F. Supp. 3d at

8    1178 (dismissing for lack of reliance); *Moreno*, 2015 WL 1457419, at *8.  (Reliance would be

9    difficult to plausibly allege: the posts predated the ride by some five-plus years.)

10          ***2.      The misrepresentation-by-omission claim fails too.***  To support her omissions

11   theory, Plaintiff says Lyft "failed to disclose" that it "prioritized growth and driver supply over

12   passenger safety" and did not "adequately protect passengers against sexual assault or harassment

13   committed by drivers."  (Am. Compl. ¶¶ 161–62.)  In the related cases,[6] each plaintiff also pointed to

14   (i) an allegation that Lyft concealed "the truth about its failure to adequately employ measures to

15   ensure … safety" (Am. Compl. ¶ 149) and (2) an allegation that "Lyft does not disclose its polices or

16   procedures on dealing with sexual assault by … drivers" (Am. Compl. ¶ 129) to support their

17   omission theory.  But the Court already found in *Means* those *verbatim* allegations "too vague" to

18   animate a misrepresentation-by-omission claim.  (*Means* Dismissal 16–17.)

19          Even on their own terms, the supposed omissions only mirror the non-actionable alleged

20   misrepresentations about safety—and thus themselves are non-actionable.  *See Ahern*, 411 F. Supp.

21   3d at 561–62; *cf. Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1023–24 (D. Ariz. 2017) (in securities

22   context, alleged omissions nonactionable when they are puffery).  Separately, although pleading a

23   fraudulent omission is "somewhat different from pleading an affirmative misrepresentation," a

24   plaintiff still "must describe the content of the omission and where the omitted information should or

25   could have been revealed, as well as provide representative samples of advertisements, offers, or

26   other representations that plaintiff relied on to make her purchase and that failed to include the

---

[6] Pl.'s Opp. to Lyft's Mot., *Means v. Lyft, Inc.*, No. 3:24-cv-177-MMC (N.D. Cal. May 10, 2024)
28   [ECF 36], at 24–25; Pl.'s Opp. to Lyft's Mot., *Spano v. Lyft, Inc.*, No. 3:24-cv-799-MMC (N.D. Cal.
     June 10, 2024) [ECF 33], at 22–23; Pl.'s Opp. to Lyft's Mot., *Hudson v. Lyft, Inc.*, No. 3:24-cv-
     1519-MMC (N.D. Cal. July 8, 2024) [ECF 36], at 19.

allegedly omitted information."  *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 906–07 (E.D. Cal. 2018) (quotation omitted); *James Erickson Fam. P'ship v. Transamerica Life Ins. Co.*, 2019 WL 4673337, at *7–8 (D. Ariz. Sept. 25, 2019) (dismissing when the plaintiff "fail[ed] to even generally identify the documents in which [the company] … withheld important information" (quotation omitted) (negligent misrepresentation by omission claim)).  Plaintiff here has not done so.

### C.    Plaintiff Has Not Alleged Any Contract or Breach.

Plaintiff asserts in three spare paragraphs that she entered into an unspecified contract for "safe and reasonable transportation," and that Lyft breached unspecified terms.  (Am. Compl. ¶¶ 243–45.)  This boilerplate states no cognizable claim—which may explain why the plaintiffs in the related actions (represented by Plaintiff's counsel here) have conceded that their contract claims, resting on the exact same allegations as those deployed here, are meritless.[7]

To proceed on a breach-of-contract claim, a plaintiff must plead, among other things, "the specific provisions in the contract creating the obligation the defendant is said to have breached." *Brackett v. Am. Airlines Grp. Inc.*, 2021 WL 3514012, at *2 (N.D. Cal. Aug. 10, 2021) (quotation omitted); *accord BHPH Cap. LLC v. JV Wholesalers LLC*, 2023 WL 5932801, at *4 (D. Ariz. Sept. 12, 2023).  Plaintiff has not done so.  *See Brackett*, 2021 WL 3514012, at *2 (dismissing because "Plaintiff fails to identify the contractual terms that were allegedly breached"); *BHPH*, 2023 WL 5932801, at *3–4 (same).  Nor has she even said whether the allegedly breached contract was written, oral, or implied.  To be sure, she asserts the "essence" of her contract with Lyft "was the payment of a fee … in exchange for safe and reasonable transportation."  (Am. Compl. ¶ 243.)  But this does not say anything about any specific provision breached.

### III.    PLAINTIFF'S STATUTORY UNFAIR-COMPETITION CLAIM FAILS

With nothing more than a bare recitation of the elements of an unfair-competition claim (Claim 10, under California Business & Professions Code § 17200 *et seq.*), Plaintiff demands "injunctive relief to prevent future unfair competition."  (Am. Compl. ¶ 313.)  That she has done nothing more than parrot the elements of an alleged claim is a pleading deficiency that merits

---

[7] *See Means* Dismissal 2 n.2; Pl.'s Opp. to Lyft's Mot., *Spano v. Lyft, Inc.*, No. 3:24-cv-799-MMC (N.D. Cal. June 10, 2024) [ECF 33], at 1 n.2; Pl.'s Opp. to Lyft's Mot. *Hudson v. Lyft, Inc.*, No. 3:24-cv-1519-MMC (N.D. Cal. July 8, 2024) [ECF 36], at 1 n.2.

1    dismissal on its own. *ROTFL Prods., LLC v. Gzebb*, 2013 WL 12181763, at *3 (N.D. Cal. Aug. 5,

2    2013) (complaint that "merely recites the elements of a claim for relief under" unfair-competition

3    statute "insufficient to defeat a motion to dismiss" (quotation omitted)). And the words she does

4    deploy plead her out of that claim entirely, because they demonstrate she has no standing and cannot

5    establish the Court's equitable jurisdiction to hear the claim.

6         *First*, Plaintiff lacks standing to bring an unfair-competition claim because she does not

7    allege a concrete actual-and-imminent threatened injury. Because she is seeking injunctive relief,

8    the alleged injury must include a showing that she is "realistically threatened by a *repetition* of the

9    [alleged] violation." *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *3 (N.D. Cal. Dec. 21, 2006)

10   (quotation omitted; emphasis in the original). But Plaintiff nowhere says she intends to use the Lyft

11   platform in the future, and her complaint is to the contrary. She states that had she been aware "of

12   the risks … associated with the use of the Lyft App," she "would not have engaged a ride through

13   the Lyft App." (Am. Compl. ¶ 304.) Because, by her own words, Plaintiff does not intend to use the

14   Lyft platform going forward (now being aware of purported "risks … associated with" its use), she

15   faces no realistic threat of a future violation and thus does not have standing. *See Doe v. Match.com*,

16   789 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2011) (no standing to bring unfair-competition claim

17   where plaintiff "suggest[ed] that she does not intend to use [Match.com's] services [in the] future").

18   There are no grounds to discount her statement (made, presumably, consistent with Federal Rule 11),

19   and there is no way to understand her words other than as an admission she will not use the Lyft

20   platform in the future. Plaintiff's admitted lack of standing yields dismissal with prejudice.

21        *Second*, Plaintiff has not pleaded facts establishing the Court's equitable jurisdiction. A

22   "plaintiff seeking equitable relief under the [California unfair-competition statute] must demonstrate

23   the inadequacy of a remedy at law." *Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal.

24   Mar. 21, 2023). Plaintiff does not allege an inadequate remedy at law, much less offer facts

25   sufficient to make that showing. And the amended complaint pleads otherwise, alleging that

26   "Plaintiff brings this civil action … to recover damages for the injuries … suffered as a result of

27   being raped." (Am. Compl. ¶ 8.) As with the plaintiff in *Rodriguez*, Plaintiff seeks damages and

28   then fails to "explain how likely or impending it is" that the harm will repeat, foreclosing equitable

1    jurisdiction.  2023 WL 3150075, at *5.

2    The Court can dismiss the unfair-competition claim on either of these non-merits bases, *see*

3    *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (court can address

4    non-merits issues in any order); *Turrey v. Vervent, Inc.*, 2023 WL 6390620, at *3 (S.D. Cal. Sept.

5    29, 2023) (equitable jurisdiction non-merits), before reaching Plaintiff's failure to offer anything

6    more than a bare assertion of the claim's elements.  (Were the claim to proceed past these threshold

7    deficiencies, the claim would raise subject-matter jurisdiction concerns, given that it asks the Court

8    to make public policy regarding transportation-network companies.  But the California legislature

9    has vested this authority exclusively in the California Public Utility Commission:  California Public

10   Utilities Code § 1759 provides that "[n]o court … shall have jurisdiction" to "restrain[] or interfere

11   with the commission in the performance of its official duties."  "[W]hen the relief sought would …

12   interfere[] with a broad and continuing supervisory or regulatory program of the commission,"

13   courts have "barred the action under section 1759."  *San Diego Gas & Elec. Co. v. Superior Ct.*

14   (*Covalt*), 13 Cal. 4th 893, 919 (1996).)

15                                        **CONCLUSION**

16   For the reasons detailed above, the Court should dismiss Plaintiff's claims and theories

17   alleging negligent hiring, retention, and supervision; misrepresentation; vicarious liability; breach of

18   contract; unfair competition; and heightened tort duties.

19

20

21

22

23

24

25

26

27

28

1    Dated:  July 19, 2024                    Respectfully submitted,

2

3                                             By: /s/  Warren Metlitzky

4                                             Warren Metlitzky (CA Bar No. 220758)
                                              CONRAD | METLITZKY | KANE LLP
5                                             217 Leidesdorff Street
                                              San Francisco, CA 94111
6                                             Tel:    (415) 343-7100
                                              Fax:    (415) 343-7101
7                                             Email: wmetlitzky@conmetkane.com

8                                             Beth Stewart (*pro hac vice*)
                                              David Randall J. Riskin (*pro hac vice*)
9                                             WILLIAMS & CONNOLLY LLP
                                              680 Maine Ave., S.W.
10                                            Washington, DC 20024
                                              Tel:    (202) 434-5000
11                                            Fax:    (202) 434-5029
                                              Email:  bstewart@wc.com
12                                            Email:  driskin@wc.com

13                                            *Attorneys for Lyft, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28