1   RACHEL ABRAMS (Cal Bar No. 209316)
    ADAM B. WOLF (Cal Bar No. 215914)
2   **Peiffer Wolf Carr Kane Conway & Wise, LLP**
    555 Montgomery Street, Suite 820
3   San Francisco, CA 94111
    Telephone: 415.766.3544
4   Facsimile: 415.840.9435
    Email: rabrams@peifferwolf.com
5   Email: awolf@peifferwolf.com
    *Counsel for Plaintiff*
6

7                  **UNITED STATES DISTRICT COURT**

8                  **NORTHERN DISTRICT OF CALIFORNIA**

9                  **SAN FRANCISCO DIVISION**

10

11                                          )   Case No. 3:24-cv-01535-MMC
                                            )
12   Maribeth Stencel, an individual,       )
                                            )   **PLAINTIFF'S OPPOSITION TO**
13                                          )   **LYFT, INC.'S MOTION TO DISMISS**
                    Plaintiff,              )   **FIRST AMENDED COMPLAINT**
14                                          )
                                            )
15         v.                               )
                                            )
16   Lyft, Inc., a Delaware Corporation; and )
     DOES 1 through 50, Inclusive,          )
17                                          )
                                            )
18                  Defendants.             )
                                            )
19                                          )

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................................... 1

III.  LEGAL STANDARD ...................................................................................................... 3

IV.   ARGUMENT .................................................................................................................... 4

   A.   PLAINTIFF HAS ADEQUATELY ALLEGED THAT LYFT IS A COMMON
   CARRIER AND IS VICARIOUSLY LIABLE FOR THE CONDUCT OF ITS DRIVERS.. 4

   1.   Plaintiff has adequately alleged Lyft's common-carrier status under Arizona and
   California law.................................................................................................................... 4

   2.   Nondelegable duties generally ................................................................................. 6

   3.   Common carriers owe nondelegable duties to protect passengers against sexual assault.
       7

   B.   LYFT IS LIABLE FOR ITS DRIVER'S CONDUCT UNDER THE DOCTRINE OF
   *RESPONDEAT SUPERIOR.* ................................................................................................ 8

   C.   LYFT IS VICARIOUSLY LIABLE FOR ITS DRIVER'S CONDUCT UNDER THE
   DOCTRINE OF APPARENT AGENCY. ............................................................................ 12

   D.   LYFT IS VICARIOUSLY LIABLE FOR ITS DRIVER'S CONDUCT UNDER THE
   DOCTRINE OF RATIFICATION. ...................................................................................... 14

   E.   LYFT IS NEGLIGENT IN HIRING, TRAINING AND RETENTION OF ITS
   DRIVERS............................................................................................................................. 16

V.    CONCLUSION .............................................................................................................. 17

1

2

## CASES

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 3

*Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phoenix, Inc.*, 197 Ariz. 535,
(App. 2000) ......................................................................................................... 9

*Beliveau v. Caras*, 873 F. Supp. 1393 (C.D. Cal. 1995) ....................................... 10, 12

*Berger v. S. Pac. Co.*, 144 Cal. App. 2d 1 (1956) ..................................................... 5

*Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) .............................. 15

*C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094 (2009) ............................ 15

*Carr v. WM. C. Crowell Co.*, 28 Cal. 2d 652 (1946) ............................................... 11

*Clark Equip. Co. v. Wheat*, 92 Cal. App. 3d 503 (1979) ........................................ 13

*Corral v. Fid. Bankers Life Ins. Co.*, 129 Ariz. 323 (App.1981) ............................ 13

*Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1158 (2019) ....................................... 15

*Doe v. Roman Cath. Church of Diocese of Phoenix*, 255 Ariz. 483 (Ct. App. 2023)..................... 8

*Doe v. Virgin Am., Inc.*, Case No. 18-cv-02420-DMR (N.D. Cal. Oct. 22, 2018) ................ 10, 12

*Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 253 Ariz. 515 P.3d 701
(Ct. App. 2022) .................................................................................................. 13

*Fajardo v. United States*, 792 F. App'x 481, 482 (9th Cir. 2020) .......................... 10

*Franklin v. Santa Barbara Cottage Hosp.*, 82 Cal. App. 5th 395 (2022) ................ 13

*Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96 (1990) ......................... 5, 6, 8, 12

*Higginbotham v. AN Motors of Scottsdale*, 228 Ariz. 550 (2012) .......................... 9

*Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741 (1997) ............... 13

*Lisa M. v. Henry Mayo Newhall Memorial Hosp.*, 12 Cal.4th 291 (1995) .......................... 9, 11, 12

*Lopez v. Zarbee's, Inc.*, No. 22-CV-04465-CRB (N.D. Cal. Jan. 17, 2023) ................... 3

*Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190 (Ct. App. 2002).............................. 4

*McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 105 Cal. Rptr. 3d 378 (Cal. 2010)..................... 10

*McCloud v. Ariz. Dep't of Pub. Safety*, 217 Ariz. 82, (App. 2007) .......................... 9

*Morton v. De Oliveira*, 984 F.2d 289 (9th Cir. 1993)............................................... 7

*Mulhern v. City of Scottsdale*, 165 Ariz. 395 (Ct. App. 1990) .............................. 16

*Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117 (2012) ................... 5, 6

*Phoenix Western Holding Corporation v. Gleeson*, 18 Ariz. App. 60, 500 P.2d 320
(Ariz. Ct. App. 1972) ......................................................................................... 15

*Pruitt v. Pavelin*, 141 Ariz. 195, 685 P.2d 1347 (Ct. App. 1984).......................... 16

*Quinonez ex rel. Quinonez v. Andersen*, 144 Ariz. 193, 696 P.2d 1342 (Ct. App. 1984).............. 16

*Ruesga v. Kindred Nursing Centers, L.L.C.*, 215 Ariz. 589, 161 P.3d 1253 (Ct. App. 2007)....... 13

*Samantha B. v. Aurora Vista Del Mar, LLC*, 77 Cal. App. 5th 85, 108 (Cal. App. 2022) ............ 11

*Simon v. Safeway, Inc.*, 217 Ariz. 330, 172 P.3d 1031 (2007)................................. 7

*Stangvik v. Shiley Inc.*, 54 Cal. 3d 744, 819 P.2d 14 (1991)................................... 10

*State, Dep't of Admin. v. Schallock*, 189 Ariz. 250, 941 P.2d 1275 (1997) ............. 9

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007).............................................. 4

*Thomas v. Regents of the Univ. of Cal.*, 97 Cal. App. 5th 587 (2023)........................ 15

*White v. Cnty. of Orange*, 166 Cal. App. 3d 566 (1985)........................................ 13

*Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010) ..................................... 9, 10, 12

## STATUTES AND OTHER AUTHORITIES

Cal. Bus. & Prof. Code § 17200 ............................................................................ 1

Cal. Civ. Code § 2100 ............................................................................................ 7

Cal. Civil Code §§ 2300, 2317, 2334.................................................................... 13

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 4

Fed. R. Civ. P.Rule 9(b)......................................................................................... 3

Restatement (Second) Of The Law Of Agency, § 213 .......................................... 16

Restatement (Second) of Torts § 314A .................................................... 7, 8, 12

Second Restatement § 314A(1)(b) ......................................................................... 8

28

1

## I.     <u>INTRODUCTION</u>

Plaintiff brings this action against Lyft to recover damages she suffered as a result of a horrific sexual assault by her Lyft driver. That attack caused Plaintiff severe physical and emotional trauma that has impacted every aspect of her life.

Lyft has filed a motion to dismiss [Dkt. No. 35], advancing the following arguments:

(1) Plaintiff's common carrier, vicarious liability, and non-delegable-duties theories fail under Arizona law;

(2) Plaintiff did not sufficiently plead claims for misrepresentation, or breach of contract;

(3) Plaintiff did not adequately state a statutory unfair-competition claim.[1]

At this time, Plaintiff abjures her claims for misrepresentation (Claim 2) and breach of contract (Claim 8), as well as claims arising from California's unfair-competition statute Cal. Bus. & Prof. Code § 17200 (Claim 10), although after discovery and with leave of the Court, Plaintiff may reallege these claims as warranted. As detailed below, Lyft's motion regarding the remaining claims should be denied. Plaintiff has adequately alleged Lyft's common-carrier and vicarious liability and has stated viable claims against Lyft pursuant to Arizonia and California law.

## II.     <u>FACTUAL BACKGROUND</u>

The relevant factual background for Plaintiff's suit is set forth in the First Amended Complaint ("FAC"). [Dkt No. 26, ¶¶ 24-141]. Several key facts bear repeating here, however.

Lyft is a transportation company. Passengers pay Lyft a fee in exchange for safe passage to their destination. *Id.* at ¶ 24. Lyft has designed its transportation system around the Lyft App, through which users request and pay for rides, and drivers accept and receive compensation for

---

[1] Lyft does not seek dismissal of Plaintiff's claims for Negligence (Claim 1), Negligent Failure to Warn (Claim 3), Negligent Infliction of Emotional Distress (Claim 4), or Strict Product Liability (Claim 9).

those rides. *Id.* Lyft completely controls its transportation system: it decides whom to approve as accountholders; it decides how to recruit, screen, hire, and monitor its drivers; it sets the terms of use for riders and drivers; it sets fares and driver compensation; it controls how rides are requested, accepted, modified or canceled; it sets pick-up and drop-off locations; it controls what information about drivers is shared with passengers (and vice versa); and it decides what safety features, if any, to implement. *Id.* at ¶¶ 24-77.

As a transportation company, Lyft assumes a duty to keep its passengers safe. It represents and markets that it can be trusted to safely transport someone from one place to another. However, Lyft's business model carries an elevated risk of sexual assault, particularly for vulnerable passengers, like Plaintiff. Lyft aggressively recruits large numbers of people to be Lyft drivers, learning little about them, even though these drivers will have the power to control the freedom of movement of their passengers, who are isolated from potential witnesses, aid, and escape while in a Lyft vehicle. *Id.* at ¶ 80. Thus, an elevated risk of sexual assault was always a foreseeable consequence of Lyft's business model, and Lyft knew this. Lyft easily could have addressed this risk, but it failed to implement the necessary safety measures, and its passengers have suffered the consequences. *Id.* at ¶¶ 83-84.

Lyft has had many options for reducing the risk of sexual assault on its platform, including: rigorous screening of drivers; prompt termination of drivers who engage in sexual misconduct; in-App tools such as panic buttons, coordination with law enforcement; surveillance for unusual conduct during rides; strict penalties and accountability for drivers; diligent investigation of allegations of sexual assault; truthfully communicating the risks associated with its platform, particularly for intoxicated or other vulnerable riders, and mandating installation of cameras that cannot be deactivated during trips, among many others. *Id.* at ¶ 87.

However, Lyft has done none of these things. Lyft's desire to put more drivers on the street has outweighed any concern it has for the safety of its passengers.

For many years, Lyft refused even to report any statistics about sexual harassment or sexual assault by its drivers. *Id.* at ¶ 123. It was not until October 2021 that Lyft finally released a report on the safety of its platform. In that "Community Safety Report," Lyft noted 10 deaths, over 4,100 sexual assaults, and 360 rapes between 2017-2019—a clear indication that its policies and procedures were not preventing horrific sexual offenses during its rides. *Id.* at ¶ 124. Lyft has failed to update its reporting to include statistics after 2019. The fact is, Lyft is more interested in protecting its bottom line than it is in protecting its drivers and riders, and incidents like the one that occurred with Plaintiff continue to happen far too frequently. Because of Lyft's actions (and inaction), Plaintiff and other Lyft users were unable to protect themselves from attack and had little information about the strangers Lyft hired to transport them.

Lyft's failures to implement adequate safety features had dire consequences for Plaintiff, who was sexually assaulted by her Lyft driver in April 2023. *Id.* at ¶¶ 133-141. The Lyft driver took advantage of her vulnerable state to isolate and sexually assault her. Plaintiff suffered severe mental anguish, which continues to this day, from her attack.

### III.   LEGAL STANDARD

A complaint must plead only "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When "evaluating a motion to dismiss, the Court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Lopez v. Zarbee's, Inc.*, 2023 WL 210878, at *2 (N.D. Cal. Jan. 17, 2023). Under Fed. R. Civ. P. Rule 9(b), "allegations of fraud

must be specific enough to give defendants notice of the particular misconduct which is alleged to

constitute the fraud charges so that they can defend against the charge and not just deny that they

have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation

omitted). If the Court dismisses a complaint for failure to state a claim, it should "freely give

leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

## IV.    ARGUMENT

### A.    PLAINTIFF HAS ADEQUATELY ALLEGED THAT LYFT IS A COMMON CARRIER AND IS VICARIOUSLY LIABLE FOR THE CONDUCT OF ITS DRIVERS.

Plaintiff asserts several independent bases for vicarious liability, including nondelegable

common-carrier duties (Claim 5); other non-delegable duties (Claim 6); and *respondeat superior*,

apparent agency, and ratification (Claim 7). Lyft contends that Plaintiff cannot succeed on those

theories because (1) Arizona law's common carrier-negligence is subsumed under Plaintiff's

general negligence claims; and (2) the Lyft driver's conduct was outside the scope of his

employment or agency and thus Lyft is not vicariously liable.[2]

#### 1.    Plaintiff has adequately alleged Lyft's common-carrier status under Arizona and California law.

Under Arizona law, common carriers were formerly required to exercise the highest

degree of care practicable under the circumstances. This was known as the Common Carrier Rule,

and it imposed a higher standard of care than the duty to exercise reasonable care with which a

typical person must comply. Failing to adhere to the higher standard meant the common carrier

was negligent and could be held liable for damages caused by its failure to meet the heightened

standard. The rationale behind the heightened standard was that passengers are completely

---

[2] Lyft does not challenge the sufficiency of Plaintiff's allegations that the driver who assaulted her was in fact a Lyft employee acting as its agent.

dependent on common carriers to take safety precautions. *Lowrey v. Montgomery Kone, Inc.,* 202 Ariz. 190, 195, 42 P.3d 621, 626 (Ct. App. 2002). This reasoning dates back to "the age of steam railroads," when common carriers were far more hazardous. *Id.*  Arizona has since rejected the heightened standard for common carriers. Now, the ordinary negligence standard of reasonable care under the circumstances applies to common carriers. *Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117, 119, 271 P.3d 1104, 1106 (2012); *Lowrey*, supra. In *Nunez*, the Supreme Court reiterated that even though a common carrier is now only held to the standard of a reasonable person under the circumstances, the common carrier's duty could extend beyond the mere obligation not to create a risk of harm. Instead, common carriers have a duty to avoid harm from risks created by others. *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990).

Lyft argues that the Court should dismiss Plaintiff's "heightened-duty allegations and treat the specific common-carrier-negligence claim (Claim 5) as duplicative of Plaintiff's general-negligence claim, thus dismissing it." [Dkt. No. 35, pp. 4].  Lyft apparently has decided to simply ignore Arizona's well-established common carrier law and in turn, its duty and liability under the law. Although Arizona reduced its previous "heightened duty of care" in place of a "reasonable care" standard for common carrier liability, common carrier liability remains an independent tort which gives rise to Lyft's duty of care to its passengers.

Because Lyft argues for application of Arizona law to the question of its vicarious liability, Lyft does not challenge Plaintiff's assertion that it is a common carrier under California law. [Dkt. No. 35, pp. 5-6]. Nor does Lyft dispute whether California law imposes a nondelegable duty on common carriers that extends to intentional acts. It thus has waived any such arguments. Nevertheless, California law is clear that common carriers like Lyft owe a nondelegable duty to safely transport their passengers and to protect them from assault. See Cal. Civil Code § 2100;

*Doe v. Uber Techs.*, 184 F.Supp.3d 774, 787 (N.D. Cal. 2016) (Ilston, J.); *Berger v. S. Pac. Co.*, 144 Cal. App. 2d 1, 6-7 (1956) (recognizing the "broad duty as a common carrier to protect its passengers from assault" and finding that an assault by a carrier's "agents or employees" is a breach of the common carrier's nondelegable duty of protection). Importantly, common-carrier liability for such assaults does not depend on the scope of employment of the perpetrator. *Id.* at 6-7 (holding that such liability is not dependent on whether the conduct occurred in the course and scope of employment, but extends to conduct outside the performance of the agent's duties); *Doe v. Uber* 184 F. Supp. 3d at 786 (denying Uber's motion to dismiss two passengers' claims that Uber was vicariously liable for its drivers' sexual assaults committed against them).

Accordingly, under both Arizona and California law, Lyft is a common carrier and is liable for its drivers' conduct.

### 2.    Nondelegable duties generally

A nondelegable duty gives rise to vicarious liability (*i.e.*, distinct from *respondeat superior* liability). Such liability arises because, under certain circumstances, the law does not allow a defendant to delegate liability arising from its work, even when it has delegated a task to an independent contractor or employee.  Arizona recognizes nondelegable duty to prevent companies from escaping liability for the wrongdoing of independent contractors they hire. *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990). The nondelegable duty generally applies to situations involving a "higher duty to some class of persons . . . imposed by statute, by contract, by franchise or charter, or by the common law." *Id.* (citing PROSSER AND KEETON ON THE LAW OF TORTS § 71, at 501 (5th ed. 1984)).  Distinctively different from the state laws briefed in other related cases this Court has entertained on the relationship between a common carrier and its passengers, Arizona has abandoned a heightened duty of care for common carriers in favor of an objective, reasonable person standard of care. *Nunez v. Pro.*

1   *Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117, 122, 271 P.3d 1104, 1109 (2012).

2       Also distinguishing Arizona from other jurisdictions this Court has reviewed, Arizona

3   courts have recognized a nondelegable duty exception where a business hired independent

4   contractors specifically for the purpose of performing a service "aimed, in substantial part, at

5   protecting [its] business operations, property, and profit." *Simon v. Safeway, Inc*., 217 Ariz. 330,

6   172 P.3d 1031, 1039 (2007). In *Simon*, the court found Safeway vicariously liable for injury

7   caused when a security guard on its premises assaulted a patron of the store, despite the security

8   guard being an independent contractor, and despite the lack of an initial duty on Safeway's part.

9   *Id*. at 1039-40. "[W]hen, as here, a business owner assumes a duty to provide security services,

10  that duty is nondelegable, and the owner will not be insulated from liability for the tortious acts of

11  security personnel hired as independent contractors." *Id*. at 1040.

12

13      Lyft explicitly assumes the duty of keeping passengers safe—not just that of providing

14  them transportation home, and Lyft's community guidelines constitute Lyft assuming the duty of

15  ensuring the safety of its passengers. Indeed, Lyft markets itself as providing safety to its

16  passengers. Lyft drivers are hired based on their perceived safety, which is wholly dictated by

17  Lyft's safety regulations and standards, including but not limited to background checks.

18

19

20          **3.      Common carriers owe nondelegable duties to protect passengers**
                       **against sexual assault.**

21

22      A common carrier's nondelegable duty of care is among the most widely recognized

23  nondelegable duties. Restatement (Second) of Torts § 314A; Cal. Civ. Code § 2100; *see also,*

24  Second Restatement § 314A(1)(b).  The Ninth Circuit has observed that this nondelegable duty

25  does not trace to "obsolete concepts" but is a "widely adopted rule" which has a "meaningful

26  basis" grounded in the "duty of protective care that [the principal] may not delegate." *Morton v.*

27  *De Oliveira*, 984 F.2d 289, 291-92 (9th Cir. 1993) (holding cruise line vicariously liable for its

28

crew member's alleged rape of a passenger based on the "general rule" that "a carrier is liable to its passengers for assaults by employees prompted by purely personal motives") (citation omitted). The common carrier's special relationship imposes a duty to avoid harm from "risks created by the individual at risk as well as those created by a third party's conduct." Restatement (Third) of Torts ("Third Restatement"): Liability for Physical Harm § 40 cmt. g (Proposed Final Draft No. 1 2007);  *see also*, *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990) (noting that common carriers "are often held to possess an affirmative duty to guard the safety of their [passengers]"); Second Restatement § 314A cmt. d.  In addition, a common carrier owes a duty to render passengers "first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others," regardless of whether the carrier created the risk of harm. Second Restatement § 314A(1)(b).

Although they impose broader duties on common carriers than on ordinary actors, the Restatements require only the exercise of "reasonable care." Second Restatement § 314A cmt. e (stating that even with special relationships and affirmative duties "[t]he duty in each case is only one to exercise reasonable care under the circumstances"); Third Restatement § 40 cmt. d. *See* Restatement (Second) of Agency § 214, cmt. a ("[T]the extent of this liability depends upon the duty assumed."). The nature and scope of a common carrier's nondelegable duty owed to its passengers is "to take reasonable action … *to protect them against unreasonable risk of physical harm*." Restatement (Second) of Torts § 314A (emphasis added). When a common carrier delegates this work to drivers, it is liable for their negligent failure to protect passengers, and all the more liable for their attacks on the very passengers they are supposed to protect.

### B.    LYFT IS LIABLE FOR ITS DRIVER'S CONDUCT UNDER THE DOCTRINE OF *RESPONDEAT SUPERIOR*.

Because a common carrier owes its passengers a nondelegable duty of protection, it is vicariously liable for sexual assaults that its delegees perpetrate on passengers. Under Arizona

1   law, "'[a]n employer is vicariously liable for the negligent or tortious acts of its employee acting

2   within the scope and course of employment.'" *Doe v. Roman Cath. Church of Diocese of*

3   *Phoenix*, 255 Ariz. 483, 533 P.3d 214, 222 (Ct. App. 2023) (hereinafter, *Doe*) (quoting *Baker ex*

4   *rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phoenix, Inc.*, 197 Ariz. 535, 5 P.3d 249, 254

5   (App. 2000)), review denied (Dec. 15, 2023). "Whether an employee's tort is within the course

6   and scope of employment is generally a question of fact, and only becomes a question of law if

7   the undisputed facts indicate that the conduct was clearly outside the scope of employment."

8   *Higginbotham v. AN Motors of Scottsdale*, 228 Ariz. 550, 269 P.3d 726, 728 (2012) (citing

9   *McCloud v. Ariz. Dep't of Pub. Safety*, 217 Ariz. 82, 170 P.3d 691, 700 (App. 2007)). There is no

10  bright-line rule that intentional misconduct (even of a sexual nature) <u>must</u> be outside the course

11  and scope of employment, as illustrated by the court's holding in *State, Dep't of Admin. v.*

12  *Schallock,* 189 Ariz. 250, 941 P.2d 1275, 1284 (1997). The *Schallock* court found the state could

13  be held liable for a manager's repeated sexual harassment of his juniors because "the acts

14  complained of were part of or incidental to [his] employment." *Id.* As is the case here, the Lyft

15  driver's sexual assault was perpetrated due to his job as a Lyft driver and part of or incidental to

16  his role as a Lyft driver. The driver was within his duties to provide Plaintiff a safe ride home, the

17  opportunity for committing a sexual assault was incidental (albeit foreseeable) to his Lyft driver

18  duties.

19      There is an actual conflict between California and Arizona law regarding the question of

20  Lyft's *respondeat superior* liability for the sexual assault committed by its driver. Specifically,

21  California imposes *respondeat superior* liability whenever there is a "nexus … between the

22  employment and the tort," for example, when the tort is "generally foreseeable." *Xue Lu v.*

23  *Powell*, 621 F.3d 944, 948 (9th Cir. 2010) (citing *Lisa M. v. Henry Mayo Newhall Memorial*

24  *Hosp.,* 12 Cal.4th 291, 302 (1995)). California's rule is not based on fault, but instead "reflects

25  the central justification for *respondeat superior* [liability]: that losses fairly attributable to an

26  enterprise—those which foreseeably result from the conduct of the enterprise—should be

27  allocated to the enterprise as a cost of doing business." *Id.*

28

Lyft insists, however, that California has "little interest" in regulating Lyft's vicarious liability here because Plaintiff's assault took place out of state. [Dkt. No. 35, pp. 5-6]. California courts routinely recognize, however, that California has a substantial interest in regulating the liability of entities that reside and do business in California, and that this interest is particularly acute when the alleged wrongful conduct by that defendant occurred in California. *Stangvik v. Shiley Inc.*, 54 Cal. 3d 744, 759, 819 P.2d 14, 23 (1991) (recognizing that California has a strong interest in regulating the conduct of resident companies whose products cause injuries in other states to deter such negligent conduct); *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 529 (2010). Here, the Complaint makes clear that Lyft controlled and directed all aspects of its transportation network from California. [Dkt. No. 26, ¶ 20-22]. Thus, Lyft's wrongful conduct— creating a transportation network that carried a substantial risk of harm to its passengers and failing to implement adequate safety measures to address that risk—all occurred in California, and California clearly has a substantial interest in the application of its *respondeat superior* rules against Lyft here.

An employer can be held liable for misconduct by its employee, even a sexual assault, when such misconduct was generally foreseeable, and thus legally within the scope of employment. For instance, in *Doe v. Uber Techs.*, 184 F. Supp. 3d 744, the court found similar facts (a sexual assault by an Uber driver) to be sufficient to impose vicarious liability and noted: "the Court cannot determine—as Uber effectively argues—that as a matter of law sexual assault by Uber drivers is always outside the scope of employment[.]" *Id.* at 785. The court reasoned that "[a]ssaults of this nature are exactly why customers would expect taxi companies to perform background checks of their drivers" and "may be incidental to the operation of the business." *Id.* at 785-86. "At the very least," Judge Ilston held, the pleadings present a close enough call that the Court finds no reason to deviate from the ordinary rule that 'the determination whether an employee has acted within the scope of employment presents a question of fact[.]" *Id.* at 786; *see also Xue Lu*, 621 F.3d at 949 (asylum officer's sexual assault of asylum applicants within the scope of employment because the officer abused his powers for his own benefit); *Fajardo v. United States,* 792 F. App'x 481, 482 (9th Cir. 2020) (Special Agent's sexual assault of

1    interviewee during passport fraud investigation within the scope of employment); *Doe v. Virgin*

2    *Am., Inc.*, 2018 WL 5291987, at \*4 (N.D. Cal. Oct. 22, 2018) (business associate's sexual assault

3    during work trip stated claim for *respondeat superior* liability); *Beliveau v. Caras*, 873 F. Supp.

4    1393, 1400-01 (C.D. Cal. 1995) (resident manager's sexual assault of tenant stated a claim); *Carr*

5    *v. WM. C. Crowell Co.*, 28 Cal. 2d 652, 655, 657 (1946) (physical assault foreseeable and within

6    the scope of employment where defendant's enterprise "required an association of employees

7    with third parties, attended by the risk that someone might be injured. The risk of such

8    associations and conditions were risks of the employment."); *Samantha B. v. Aurora Vista Del*

9    *Mar, LLC*, 77 Cal. App. 5th 85, 108 (Cal. App. 2022) (hospital employee's sexual assaults of

10   psychiatric patients foreseeable and within the scope of employment when patients were

11   vulnerable, sexual exploitation of patients by employees was a foreseeable hazard arising from

12   the circumstances of the job, and that hazard "was exponentially increased by [defendant's]

13   policies, including allowing male workers 20 minutes alone with patients and providing

14   inadequate training on worker-patient boundaries").

15       Here, as in *Doe v. Uber*, Plaintiff alleges that Lyft's business model intentionally targeted

16   vulnerable passengers like Plaintiff, encouraging them to entrust their safety to a Lyft driver and

17   get into a vehicle, often at late hours, intoxicated, or alone, from which they had limited

18   opportunities to escape, with drivers controlling their ability to exit the vehicle. [Dkt. No. 26, ¶¶

19   113, 224(j)]. Further, Lyft's policies and procedures created risks by failing to adequately screen,

20   supervise, train, report, and discipline bad drivers, and by failing to implement procedures, like

21   the installation of cameras, that would prevent or inhibit assaults. [Dkt. No. 26, ¶¶ 320-21].

22       To be clear, Plaintiff does not attempt to impose liability on Lyft simply because it

23   brought the "tortfeasor and victim together." *Lisa M.*, 12 Cal. 4th at 298. Rather, Plaintiff

24   contends that Lyft is liable because it created a business model that attracted assailants to become

25   drivers, and then it went further in enabling drivers to carry out their crimes. Lyft conducts its

26   business under circumstances fraught with risk of physical harm and abuse, especially to women.

27   Lyft accepted these same risks as part of the cost of doing business, even while it sought to mask

28   them and convey the legitimacy and safety of its platform. Lyft did not just bring Plaintiff and her

1   assailant-driver together, it knowingly brought them together under conditions ripe for abuse. In

2   this context, sexual assault is not "so unusual or startling that it would seem unfair to include the

3   loss resulting from it among other costs of [Lyft's] business." *Farmers*, 11 Cal. 4th at 1003.

4   Stated another way, the assault on Plaintiff was "engendered by or broadly incidental" to Lyft

5   driver's employment. *Lisa M.*, 12 Cal. 4th at 306.

6         This Court should follow the principles set out by the Ninth Circuit in *Xue Lu* and

7   recognize that the "scope of employment" analysis cannot be rigidly applied across the board, as

8   Lyft insists, but is fact dependent and gives considerable weight to the foreseeability of the

9   tortious conduct, as well as the policy considerations of California. *See Doe v. Uber Techs.*, 184

10  F.Supp.3d at 784-85 (assault by Uber driver); *Doe v. Virgin Am.*, 2018 WL 5291987, at *4

11  (assault by business associate during work trip); *Peralta v. United States*, 475 F. Supp. 3d 1086,

12  1096 (C.D. Cal. 2020) (correctional officer's assault of inmate); *Beliveau*, 873 F. Supp. at 1400

13  (resident manager's sexual assault of tenant). Applying these principles here, it is clear that

14  Plaintiff has adequately alleged facts supporting Lyft's *respondeat superior* liability for its

15  driver's assault on Plaintiff.

16        Accordingly, whether applying Arizona or California law, Lyft is liable under *respondeat*

17  *superior* for its driver's conduct.

## C.    LYFT IS VICARIOUSLY LIABLE FOR ITS DRIVER'S CONDUCT UNDER THE DOCTRINE OF APPARENT AGENCY.

20        The doctrine of apparent agency prevents a principal, whose own acts create the

21  impression of agency, from later disclaiming liability when third parties rely on that impression

22  and suffer harm as a result. Plaintiff alleges that, because Lyft represented that Lyft drivers were

23  its agents and because drivers with bad intentions used that apparent authority to lure victims into

24  their cars, Lyft is estopped from maintaining now that passenger safety was solely the

25  responsibility of the drivers, not Lyft. [Dkt. No. 26, ¶ 247].

27        Lyft does not dispute in its motion the existence of an apparent agency relationship with

28  its drivers. Instead, it relies on the Restatement (Third) of Agency § 7.08 reporter's n.b.; *see Ft.*

*Lowell*, 800 P.2d at 968 (Arizona courts "usually" apply the Restatement "[a]bsent Arizona law

to the contrary").[Dkt. No. 35, p. 9]. But under Arizona law, "'[t]he question of whether an

agency existed is one of fact."  *Ruesga v. Kindred Nursing Centers, L.L.C.,* 215 Ariz. 589, 161

P.3d 1253, 1259 (Ct. App. 2007) (quoting *Corral v. Fid. Bankers Life Ins. Co.,* 129 Ariz. 323,

630 P.2d 1055, 1058 (App.1981)). An apparent agency exists "when (1) a principal 'intentionally

or inadvertently' leads one party 'to believe an agency exists,' and (2) the party justifiably relies

on the principal's representations." *Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 253

Ariz. 515, 515 P.3d 701, 706 (Ct. App. 2022), *review denied* (Dec. 6, 2022). Unlike Texas in

*Spano*, Arizona imposes <u>no requirement</u> that a plaintiff make a showing that the agent had the

principal's blessing to commit a tort. Plaintiff was reasonable in relying on the apparent agency of

Lyft's drivers in procuring the ride, getting into the Lyft driver's vehicle, which resulted in her

being sexually assaulted by the Lyft driver.

In California, the elements of apparent agency are defined by statute. *See* Cal. Civil Code

§§ 2300, 2317, 2334. As applied here, those elements are: (1) Lyft intentionally or carelessly

created the impression that the driver was Lyft's employee/agent, (2) Plaintiff believed that the

driver was Lyft's employee/agent, and (3) Plaintiff reasonably relied on that belief. *Franklin v.

Santa Barbara Cottage Hosp.*, 82 Cal. App. 5th 395, 405 (2022). California, like other states,

recognizes that the logic of apparent agency is incompatible with any inquiry into scope of

employment: "Liability of the principal for the acts of an ostensible agent rests on the doctrine of

'estoppel,'" which places the focus on "reliance by a third party [] and a change of position from

such reliance resulting in injury." *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal.

App. 4th 741, 747 (1997) (citation omitted); *see also Clark Equip. Co. v. Wheat*, 92 Cal. App. 3d

503, 521 (1979) (noting, in the context of apparent agency, "[i]t is immaterial that the principal

receives no benefits from the transaction."); *White v. Cnty. of Orange*, 166 Cal. App. 3d 566, 571

(1985) (liability for an apparent agent's fraud does not depend on whether "the agent was acting

for his own purposes.").

As demonstrated in *Clark*, *White*, and *Kaplan*, the scope of apparent agency liability is different from that of *respondeat superior* liability. *See, e.g.*, *Kaplan*, 59 Cal. App. 4th at 747 (key question in apparent agency case is whether injury results from a "change of position from such reliance"). Torts that arise from the work may be within the scope of employment and not within the scope of apparent agency, whereas torts enabled by reliance on the principal's representations may be in the scope of apparent agency but not in the scope of employment. For example, if a Lyft driver negligently strikes a pedestrian, the negligent driving is clearly within the scope of employment for *respondeat superior* purposes. But the pedestrian cannot rely on apparent agency to establish liability, as the injury did not result from reliance on an appearance of agency. But when a rider gets into a driver's car because she trusts that the driver is working for Lyft, and the driver abuses that trust to attack her, the driver's conduct is clearly enabled by reliance on his apparent agency, whether or not it is work-related.

Here, Plaintiff alleges that Lyft held out its drivers as its employees or agents, that Plaintiff reasonably relied on that representation by getting into a car driven by a Lyft driver, and that Plaintiff was injured because of that reliance. [Dkt. No. 26, ¶¶ 226-33]. As with California law, this is sufficient under Arizona law to allege vicarious liability based on apparent agency.

### D.    LYFT IS VICARIOUSLY LIABLE FOR ITS DRIVER'S CONDUCT UNDER THE DOCTRINE OF RATIFICATION.

A principal is liable for an agent's wrongful act, even an act outside the scope of the agent's authority, if the principal ratifies the wrongful act. Plaintiff's ratification claim is based on how Lyft reacted to sexual assaults that occurred in connection with its transportation system: it "failed to respond adequately to reports of sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to report sexual misconduct to law enforcement, and reinstated drivers after complaints of sexual misconduct." [Dkt. No. 26, ¶ 236]. These allegations support ratification-based claims under the laws of California or Arizona.

Lyft's alleged actions here of aggressively recruiting drivers, ignoring evidence of misconduct, and ensuring that drivers with previous accusations would be placed with passengers are sufficient to plead ratification under Arizona law. "[A] ratification can occur by acceptance of

the benefits of an allegedly unauthorized act when accompanied by knowledge of material facts since such amounts to a subsequent approval of the act by the principal who seeks to avoid liability." *Phoenix W. Holding Corp. v. Gleeson*, 18 Ariz. App., 66, 500 P.2d 320, 326 (1972). These cases further underscore that whether the defendant's conduct constitutes ratification is generally, as it is here, a fact question.

Under California law, the test for ratification is similarly broad and fact-bound: "A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent or to adopt the act may be fairly inferred, including conduct which is inconsistent with any reasonable intention on his part, other than he intended approving and adopting it." *Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1158 (2019) (internal quotation marks omitted). The "theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery." *Thomas v. Regents of the Univ. of Cal.*, 97 Cal. App. 5th 587, 618-19 (2023) (citation omitted). In particular, "[a] principal's failure to discharge an agent after learning of his wrongful acts may be evidence of ratification." *Dickinson*, 37 Cal. App. 5th at 1158; *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1110-11 (2009) ("The failure to discharge an employee who has committed misconduct may be evidence of ratification.").[3]

Here, Plaintiff alleges that Lyft "failed to investigate or respond to charges," *Thomas*, 97 Cal. App. 5th at 618-19, and "fail[ed] to discharge" drivers it knew had been accused of sexual misconduct. Lyft insists that Plaintiff point to a specific act ratifying Plaintiff' specific assault, but to the extent more specific information is required, that information is exclusively in Lyft's possession, and Plaintiff has adequately stated a claim, sufficient to survive dismissal at the pleadings stage, based on allegations of Lyft's knowledge of an epidemic of sexual assault on its platform and its pervasive pattern of gross indifference to that misconduct.

---

[3] Although cases speak of "employers" and "employees," an employment relationship is not a prerequisite to finding ratification. *See, e.g.*, *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 610 (C.D. Cal. 2021) (cable company ratified third-party collections agent's intentional torts); *Dickinson*, 37 Cal. App. 5th at 1158-59 (attorney ratified client's intentional tort).

1

2

### E.    LYFT IS NEGLIGENT IN HIRING, TRAINING AND RETENTION OF ITS DRIVERS

An employer may be held directly liable for negligent hiring and retention of an employee if: (1) the employer knew or should have known of the risk of hiring a particular employee; and (2) the employer's negligence proximately caused the plaintiff's injury. *See* RESTATEMENT (SECOND) OF THE LAW OF AGENCY, § 213. The FMCSRs require that an employer conduct a background investigation on applicant drivers and maintain records regarding each driver. Failure to comply with these regulations provides the basis for a claim of negligent hiring, supervision and retention. However, plaintiffs are precluded from recovering against an employer unless they first prevail on underlying negligence claims against an employee. *Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398, 799 P.2d 15, 18 (Ct. App. 1990). A claim for negligent hiring and retention is separate and independent of a claim for *respondeat superior* because negligent hiring is a direct claim against the employer, whereas *respondeat superior* is a claim for vicarious liability. *Quinonez ex rel. Quinonez v. Andersen,* 144 Ariz. 193, 197, 696 P.2d 1342, 1346 (Ct. App. 1984). Liability under *respondeat superior* arises because of the relationship between the parties, while liability for negligent hiring, training or retention arises because the employer had reason to believe that the employment would cause an undue risk of harm. *Id*. This means that in some cases a claim for negligent hiring, training or retention can succeed even though a claim for *respondeat superior* would fail. For example, if an employee was not acting within the scope of employment, the plaintiff cannot recover under *respondeat superior*, but may still be able to recover from an employer under a theory of negligent hiring. *Pruitt v. Pavelin*, 141 Ariz. 195, 202-03, 685 P.2d 1347, 1354 (Ct. App. 1984). Distinguishing the different claims also becomes important for purposes of the admissibility of evidence. As *Quinonez* illustrated, an employee's driving record is inadmissible to prove whether he was negligent and ran a red light, but it is admissible to determine whether the employer hired an incompetent driver. *Quinonez*, 144 Ariz. at 197, 696 P.2d at 1346.

Accordingly, Lyft is liable for negligently hiring, training, and retaining its driver who assaulted Plaintiff.

1

## V.    <u>CONCLUSION</u>

2      For the reasons stated above, Plaintiff respectfully requests this Court deny Lyft's motion

3   as to the stated claims.

4

5      Dated: August 9, 2024                              Respectfully submitted,

6                                                         By: */s/ Rachel Abrams*
                                                          RACHEL ABRAMS (Cal Bar No. 209316)
7                                                         ADAM B. WOLF (Cal Bar No. 215914)
                                                          **Peiffer Wolf Carr Kane Conway & Wise,**
                                                          **LLP**
8                                                         555 Montgomery Street, Suite 820
                                                          San Francisco, CA 94111
9                                                         Telephone: 415.766.3544
                                                          Facsimile: 415.840.9435
10                                                        Email: rabrams@peifferwolf.com
                                                                     awolf@peifferwolf.com
11

12                                                        *Counsel for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

     I hereby certify that on August 9, 2024, I electronically filed the foregoing document with

3

the Clerk of the Court using the CM/Dkt. No. system, which will automatically send notification

4

of the filing to all counsel of record.

5

6

                      By: */s/ Rachel Abrams*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28