1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   MARIBETH STENCEL,                        Case No.  24-cv-01535-MMC

9                Plaintiff,

10        v.                                 **ORDER GRANTING LYFT'S MOTION
                                             TO DISMISS FIRST AMENDED
11  LYFT, INC.,                              COMPLAINT**

12                Defendant.                 Re: Dkt. No. 35

13

14        Before the Court is defendant Lyft, Inc.'s ("Lyft") "Motion to Dismiss First Amended

15  Complaint," filed July 19, 2024, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules

16  of Civil Procedure. Plaintiff Maribeth Stencel ("Stencel") has filed opposition, to which Lyft

17  replied. Having read and considered the papers filed in support of and in opposition to the

18  motion, the Court VACATES the hearing scheduled for September 13, 2024, and rules as

19  follows.

20                                   **BACKGROUND**

21        Stencel, a resident of Arizona, alleges that on August 6, 2022, she was sexually

22  assaulted by her Lyft driver. (See First Amended Complaint ("FAC") ¶¶ 9, 134–141, Doc.

23  No. 26.) Specifically, she alleges she "ordered a Lyft ride" during which she "began to feel

24  lightheaded," and that thereafter, the "[d]river reached back to touch her hand" and

25  eventually "pulled into a commercial parking lot and lean[ed] his seat back." (See id. ¶

26  134–36.) She further alleges that she "woke up the next day half inside her doorway,"

27  with her "belongings . . . strewn across the front lawn," her "knees and legs . . . scraped

28  bloody" and "bruises on her hips and buttocks." (See id. ¶ 137.) Stencel alleges that she

1   thereafter "went to the hospital where a [sexual assault] exam was performed," that she

2   subsequently "reported the incident" to the police and to Lyft, and that Lyft subsequently

3   "informed [her] that the Lyft driver had been suspended from the Lyft platform." (See id.

4   ¶¶ 139–140.)

5        According to Stencel, Lyft "has known of the ongoing sexual assaults and rapes by

6   Lyft drivers upon Lyft passengers" for more than "eight years," and has responded

7   "inadequate[ly]" by "continu[ing] to hire drivers without performing adequate background

8   checks," by "allow[ing] culpable drivers to keep driving," and by "fail[ing] to adopt and

9   implement reasonable monitoring procedures designed to ensure the safety of its

10  passengers." (See id. ¶¶ 2–3.)

11       Based on the above allegations, Stencel asserts the following ten causes of action

12  against Lyft and 50 Doe defendants: (1) "Negligence (Including Negligent Hiring,

13  Retention, Supervision, and Entrustment)," (2) "Misrepresentation," (3) "Negligent Failure

14  to Warn," (4) "Negligent Infliction of Emotional Distress," (5) "Common Carrier's Non-

15  Delegable Duty to Provide Safe Transportation," (6) "Other Non-Delegable Duties to

16  Provide Safe Transportation," (7) "Vicarious Liability for Lyft Driver's Torts (Employee,

17  Retained Control, Apparent Agency, Ratification, California Public Utilities Code)," (8)

18  "Breach of Contract," (9) "Strict Product Liability (Failure to Warn and Design Defect),"

19  and (10) "Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §V 17200 Et Seq.)"

20  (See id. 26:27–64:8.)[1]

21                          **LEGAL STANDARD**

22       **A. Failure to State a Claim**

23       Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

24  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

25

26  ───────────────

27       [1] In her opposition, Stencel "abjures her claims for misrepresentation (Claim 2)
    and breach of contract (Claim 8), as well as claims arising from California's unfair-
    competition statute Cal. Bus. & Prof. Code § 17200 (Claim 10)." (See Pl.'s Opp'n. to
28  Def.'s Mot. to Dismiss ("Pl.'s Opp'n.") at 1:11–14, Doc. No. 38.)

United States District Court
Northern District of California

1    under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

2    699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

3    the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v.

4    Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

5    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

6    allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

7    entitlement to relief requires more than . . . a formulaic recitation of the elements of a

8    cause of action."  See id. (internal quotation, citation, and alteration omitted).

9        In analyzing a motion to dismiss, a district court must accept as true all material

10   allegations in the complaint and construe them in the light most favorable to the

11   nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

12   survive a motion to dismiss," however, "a complaint must contain sufficient factual

13   material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

14   v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual

15   allegations must be enough to raise a right to relief above the speculative level,"

16   Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion

17   couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and

18   citation omitted).

19       **B. Pleading Fraud with Particularity**

20       Rule 9(b) requires a plaintiff to "state with particularity the circumstances

21   constituting fraud," see Fed. R. Civ. P. 9(b), specifically, the "who, what, when, where,

22   and how of the misconduct charged," see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

23   1106 (9th Cir. 2003) (internal quotation and citation omitted), and applies to claims based

24   on "misrepresentations" as well as "omissions," see GlenFed Inc. Sec. Litig., 52 F.3d

25   1541, at 1543, 1548 (9th Cir. 1994).

26       **C. Choice of Law**

27       A district court sitting in diversity over state-law claims applies the forum state's

28   choice-of-law principles. See Nelson v. Int'l. Paint Co., 716 F.2d 640, 643 (1983), citing

1 Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). California uses a "three-step

2 governmental interest analysis" to determine which jurisdiction's law applies. See

3 Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906, 919–920 (2001)

4 (internal quotation and citation omitted). First, "the foreign law proponent must identify the

5 applicable rule of law in each potentially concerned state and must show it materially

6 differs from the law of California." See id. Second, if the laws differ, the Court must

7 "determine what interest, if any, each state has in having its own law applied to the case."

8 See id. at 920. Third, where both states have an interest in applying their own law, the

9 Court must "select the law of the state whose interests would be 'more impaired' if its law

10 were not applied." See id. Where, however, neither party shows the laws of the two

11 jurisdictions materially differ, California law applies. See Textron Inc. v. Travelers

12 Casualty & Surety Co., 45 Cal.App.5th 733, 755 (2020).

### DISCUSSION

14 By the instant motion, Lyft seeks an order dismissing Stencel's claims alleging

15 common-carrier liability (Claim 5), vicarious liability (Claim 7), and negligent hiring,

16 retention and supervision (Claim 1) for failure to state a claim. (See Def.'s Mot. to Dismiss

17 Pl.'s First Am. Compl. ("Def.'s Mot.") at 4:17–18, 10:19–20.)

### A. Common Carrier Liability

19 "A common carrier is under a duty to its passengers to take reasonable action to

20 protect them against unreasonable risk of physical harm." See Restatement (Second) of

21 Torts § 314A (Am. L. Inst. 2022). Stencel seeks to impose liability on Lyft as a common

22 carrier. (See FAC ¶¶ 189–202.)

### 1. Material Difference in Law

### a. Arizona Law

25 Lyft, citing Nunez v. Pro. Transit Mgmt. of Tuscon, Inc., 271 P.3d 1104 (Ariz.

26 2012), argues common carriers in Arizona are subject to "general 'reasonable care'

27 principles," rather than the heightened tort duties typical of a common carrier (see Def.'s

28 Mot. at 4:19–22; see also Nunez, 271 P.3d at 1109 (holding "the appropriate standard of

United States District Court
Northern District of California

1    care in negligence actions by passengers against common carriers is the objective,

2    reasonable person standard in traditional negligence law")), and, consequently, that

3    under Arizona law, Stencel's common carrier claim fails because it is duplicative of her

4    negligence claim.

5          Stencel concedes the lower standard applies under Arizona law but argues

6    "common carrier liability remains an independent tort which gives rise to Lyft's duty of

7    care to its passengers." (See Pl.'s Opp'n. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n.") at

8    5:18–21, Doc. 38.) As Lyft notes, however (see Def.'s Reply in Supp. of Mot. to Dismiss

9    ("Def.'s Reply") at 2:5–11), such assertion is devoid of citation.

10         Accordingly, as under Arizona law, Stencel's claim for general negligence and

11   common carrier liability both seek to impose liability for Lyft's negligence, the Court finds

12   Stencel's common carrier claim is duplicative of her negligence claim and, as such, is

13   subject to dismissal under Arizona law.

14             b.  **California Law**

15         Under California law, a common carrier "must use the utmost care and diligence,"

16   see Cal. Civ. Code § 2100, a standard higher than the "reasonable person" standard

17   applicable to common carrier claims in Arizona, and thus, if California law applies,

18   Stencel's common carrier claim is not duplicative of her negligence claim.

19         Accordingly, the Court finds a material difference exists between Arizona and

20   California law on the issue of Lyft's liability as a common carrier.

21         **2.  Interest in Applying Law**

22         Having ascertained that Arizona and California law differ on Stencel's common

23   carrier claim, the Court next considers each state's interest in applying its own law. See

24   Washington Mut. Bank, 24 Cal. 4th at 920. A true conflict exists only "where each

25   jurisdiction has a real and legitimate interest in having its [laws] applied under the

26   circumstances presented [by the case]." See Cassirer v. Thyssen-Bornemisza Collection

27   Found., 89 F.4th 1226, 1235–36 (9th Cir. 2024) (internal quotation and citation omitted).

28         Here, the conduct on which Stencel's claims are based occurred in Arizona (see

United States District Court
Northern District of California

1   FAC ¶ 9), and the California Supreme Court, in McCann v. Foster Wheeler LLC, 48

2   Cal.4th 68 (2010), itself recognized a jurisdiction's interest "in regulating conduct that

3   occurs within its borders," as well as "in being able to assure . . . commercial entities

4   operating within its territory that applicable limitations on liability set forth in the

5   jurisdiction's law will be available … in the event they are faced with litigation." See

6   McCann, 48 Cal. 4th at 97–98. Indeed, the California Supreme Court held that "when a

7   state adopts a rule of law limiting liability for commercial activity conducted within the

8   state in order to provide what the state perceives is fair treatment to, and an appropriate

9   incentive for, business enterprises, . . . the state ordinarily has an interest in having that

10  policy of limited liability applied to out-of-state companies that conduct business in the

11  state, as well as to businesses incorporated or headquartered within the state." See

12  McCann, 48 Cal. 4th at 91–92. Accordingly, the Court finds Arizona has a "real and

13  legitimate interest" in applying its law.

14       Turning next to California's interest, although Stencel argues California has an

15  interest in "regulating the liability of entities that reside and do business in California,"

16  especially "when the alleged wrongful conduct by that defendant occurred in California"

17  (see Pl.'s Opp'n. at 10:2–5), the cases on which she relies, McCann and Stangvik v.

18  Shiley, Inc., 54 Cal.3d 744, 759 (1991), are readily distinguishable. In McCann, the

19  California Supreme Court recognized California's interest in regulating injury-causing

20  behavior only where "the injured person or business is a California resident," see

21  McCann, 48 Cal. 4th at 94–96, and, in Stangvik, the California Supreme Court, while

22  acknowledging California's interest in "deter[ring] negligent conduct" on the part of in-

23  state manufacturers whose products cause injury to out-of-state plaintiffs, found, in the

24  context of forum non-conveniens, "the additional deterrence that would result if

25  defendants were called to account for their allegedly wrongful conduct in a California

26  court rather than the courts of [another jurisdiction] would be negligible," see Stangvik, 54

27  Cal.3d at 759. As the California Court of Appeal has noted, although California has a

28  "theoretical interest" in applying its law where a California defendant has caused an

United States District Court
Northern District of California

1   injury, that interest becomes "hypothetical" when "the injured persons are not California

2   residents and were not injured in California." See <u>Chen v. Los Angeles Truck Centers,</u>

3   <u>LLC</u>, 42 Cal. App. 5th 488, 498 (2019) (concluding California had "more hypothetical than

4   real" interest in applying its products liability law where bus distributed by California

5   defendant was involved in roll-over accident in Arizona, injuring non-California resident)

6         Given the absence of a "real and legitimate interest" on the part of California, the

7   Court finds there is no true conflict between Arizona and California law, and

8   consequently, applies Arizona law to Stencel's claim, under which Lyft is not subject to

9   heightened duties as a common carrier.

10         Accordingly, Stencel's claim alleging common carrier liability is subject to dismissal

11   as duplicative of her negligence claim.

12      **B. Vicarious Liability**

13         Lyft next seeks dismissal of Stencel's vicarious liability claim, arguing she has

14   failed to state a claim under three distinct theories: respondeat superior, apparent

15   agency, and ratification.[2] Lyft argues Arizona law applies to the claim and would preclude

16   liability under all three theories, while Stencel argues Lyft is liable under all three theories

17   in either jurisdiction.

18        **1. Arizona Law**

19           **(a) Respondeat Superior**

20         Lyft argues that, under Arizona law, an employer is liable for its employee's

21   tortious conduct under the doctrine of respondeat superior only where the employee "was

22   acing within the course and scope of his employment." (See Def.'s Mot. at 6:20–22 <u>citing</u>

23

24        [2] In the FAC, Stencel also advances a theory of vicarious liability under California

25   Public Utilities Code § 535 (<u>see</u> FAC ¶¶ 238–242) but has not responded to Lyft's
    argument that she fails to state a claim thereunder. Under these circumstances, the Court

26   finds Stencel has abandoned a claim predicated on such theory. See <u>Carvalho v. Equifax</u>
    <u>Info. Servs., LLC</u>, 629 F.3d 876, 888 (9th Cir. 2010) (holding "plaintiff who makes a claim

27   in his complaint, but fails to raise the issue in response to a defendant's motion to
    dismiss, has effectively abandoned his claim") (internal quotation, citation, and alterations

28   omitted).

7

1    Doe v. Roman Cath. Church of the Diocese of Phx., 533 P.3d 214, 222 (Ariz. Ct. App.

2    2023) (quotation omitted).)

3         In State v. Shallock, 941 P.2d 1275 (Ariz. 1997), however, the Arizona Supreme

4    Court rejected a rule that the employer is "never vicariously liable for an intentional tort"

5    committed by an employee. See id. at 1281. Under Arizona law, courts examine whether

6    an alleged sexual assault is "expressly or impliedly authorized as part of [the tortfeasor's]

7    job duties" and "incidental to his employment," thereby subjecting the employer to

8    vicarious liability, or "committed solely to further his own personal interests," thereby

9    precluding the employer's vicarious liability, to determine whether it is in the scope of

10   employment. See Doe, 533 P.3d at 222.

11        Although Stencel argues the assault here "was perpetrated due to [the assailant's]

12   job as a Lyft driver and part of or incidental to his role as [such]," her allegations fall short

13   of cases in which Arizona courts have found an assault is within the scope of

14   employment. In Shallock, for example, the Arizona Supreme Court found a jury question

15   as to authorization existed where the defendant employer "was aware for close to a

16   decade that [its employee], the person managing its affairs, was engaged in egregious

17   improprieties and did little or nothing to call it to a halt." See Shallock, 941 P.2d at 1282.

18   Here, by contrast, although Stencel alleges the assault took place during a Lyft ride (see

19   FAC ¶¶ 134–38), she also alleges that "Lyft informed [her] that the Lyft driver had been

20   suspended from the Lyft platform" (see id. ¶ 140), an allegation essentially negating any

21   inference of express or implied authorization.

22        Accordingly, under Arizona law, Stencel's vicarious liability claim, to the extent

23   predicated on a theory of respondeat superior, is subject to dismissal.

24        **(b) Apparent Agency**

25        Under Arizona law, apparent agency exists "when (1) a principal intentionally or

26   inadvertently leads one party to believe an agency exists, and (2) the party justifiably

27   relies on the principal's representations." See Fadely v. Encompass Health Valley of Sun

28   Rehab. Hosp., 515 P.3d 701, 706 (Ariz. Ct. App. 2022) (internal quotation and citation

United States District Court
Northern District of California

8

1  omitted). Lyft, relying on the Restatement of agency,[3] argues Stencel fails to state a claim

2  because she has not alleged a "close link between [the] agent's tortious conduct and the

3  agent's apparent authority." (See Def.'s Mot. at 9:9–12.) In response, Stencel argues

4  "Lyft represented that Lyft drivers were its agents" (see Pl.'s Opp'n. at 12:22-23), and that

5  Arizona law "imposes no requirement that a plaintiff make a showing that the agent had

6  the principal's blessing to commit a tort." (See Pl.'s Opp'n. at 13:10–11 (emphasis

7  omitted).)

8       Even accepting Stencel's assertion that she need not allege the Lyft driver had

9  Lyft's blessing to commit the tort, application of the doctrine of apparent agency does no

10  more than put the apparent agent in the same legal shoes as an actual agent, and, as

11  discussed above, Stencel has failed to allege conduct on Lyft's part that would impose on

12  Lyft respondeat superior liability for its driver's sexual assault. Accordingly, under Arizona

13  law, Stencel's vicarious liability claim, to the extent predicated on a theory of apparent

14  agency, is subject to dismissal.

15       **(c) Ratification**

16       Under Arizona law, ratification "is the affirmance by a person of a prior act which

17  did not bind him but which was done or professedly done on his account, whereby the

18  act, as to some or all persons, is given effect as if originally authorized by him." See

19  Phoenix Western Holding Corp. v. Gleeson, 500 P.2d 320, 326 (Ariz. Ct. App. 1972)

20  (citation omitted). It arises when a party "accept[s ] the benefits of an allegedly

21  unauthorized act when accompanied by knowledge of material facts since such

22  [acceptance] amounts to a subsequent approval of the act by the principal who seeks to

23  avoid liability." See id., 500 P.2d at 326. Where an employer is unaware of an employee's

24  misconduct, however, it cannot be said to have ratified the action. See Smith v. Am. Exp.

25  Travel Related Servs. Co., Inc., 876 P.2d 1166, 1172–73 (Ariz. 1994) (finding employer

26

27       [3] Arizona courts "usually" apply the Restatement "[a]bsent Arizona law to the
28  contrary," see Ft. Lowell-NSS Ltd. P'ship v. Kelly, 800 P.2d 962, 968 (Ariz. 1990), and
   neither party cites any Arizona law contradicting the Restatement.

United States District Court
Northern District of California

1    not liable for sexual misconduct where plaintiff failed to allege knowledge of misconduct).

2         In the instant case, Stencel, as noted, alleges Lyft "suspended" the driver from its

3    platform after she informed it of the assault (see FAC ¶ 140); she alleges no other facts

4    suggesting Lyft was aware of the particular driver's misconduct and accepted the benefits

5    thereof.

6         Accordingly, under Arizona law, Stencel's vicarious liability claim, to the extent

7    predicated on a theory of ratification, is subject to dismissal.

8              **2.  California Law**

9                   **(a) Respondeat Superior**

10        In California, the doctrine of respondeat superior permits "an employer [to] be held

11   vicariously liable for torts committed by an employee" when the plaintiff "prove[s] that the

12   employee's tortious conduct was committed within the scope of employment." See Mary

13   M v. City of Los Angeles, 54 Cal.3d 202, 208 (1991). Vicarious liability attaches where,

14   "in the context of the particular enterprise[,] an employee's conduct is not so unusual or

15   startling that it would seem unfair to include the loss resulting from it among other costs

16   of the employer's business." See id. (internal quotation and citation omitted).

17        Here, Stencel argues, "[t]here is an actual conflict between California and Arizona

18   law regarding the question of Lyft's respondeat superior liability for the sexual assault

19   committed by its driver" (see Pl.'s Opp'n. at 9:19–20), and Lyft does not argue to the

20   contrary, apparently relying on its argument that the Arizona Supreme Court's decision in

21   Shallock is limited to an exceptionally narrow body of cases (see Def.'s Mot. at 7:24–

22   8:18).

23        Under such circumstances, the Court finds Arizona and California law diverge on

24   the issue of respondeat superior liability, and, where a conflict exists, courts, as

25   discussed above, consider each state's interest in applying its own law. See Washington

26   Mut. Bank, 24 Cal. 4th at 920. As also discussed above, Stencel has failed to show

27   California has a real and legitimate interest in applying its law to the conduct here at

28   issue.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    Accordingly, to the extent Stencel's vicarious liability claim is based on a theory of

2    respondeat superior, Arizona law applies, and, consequently, such claim is subject to

3    dismissal.

4    **(b) Apparent Agency**

5    Apparent agency in California, denominated "ostensible agency," arises "when the

6    principal intentionally, or by want of ordinary care, causes a third person to believe

7    another to be his agent who is not really employed by him." See Cal. Civ. Code § 2300.

8    Ostensible agency has three requirements: (1) "[t]he person dealing with the agent must

9    do so with belief in the agent's authority and this belief must be a reasonable one," (2)

10   "such belief must be generated by some act or neglect of the principal," and (3) "the third

11   person relying on the agent's authority must not be guilty of negligence." See Kaplan v.

12   Coldwell Banker Residential Aff., Inc., 59 Cal. App.4th 741, 747 (1997).

13   Here, although Stencel argues Lyft "does not dispute in its motion the existence of

14   an apparent agency relationship with its drivers" (see Pl.'s Opp'n. at 12:27-28), Stencel,

15   as discussed above, has alleged no conduct on Lyft's part that would impose on Lyft

16   liability for its driver's sexual assault, irrespective of whether such driver is deemed an

17   actual agent or an apparent one.

18   Accordingly, no conflict existing between Arizona and California law on the issue

19   of apparent agency, California law applies, see Textron, 45 Cal.App.5th at 755, and,

20   consequently, to the extent Stencel's vicarious liability claim is based on a theory of

21   apparent agency, the claim is subject to dismissal.

22   **(c) Ratification**

23   In California, "[a] purported agent's act may be adopted expressly or it may be

24   adopted by implication based on conduct of the purported principal from which an intent

25   to consent or adopt the act may be fairly inferred." See Dickinson v. Cosby, 37

26   Cal.App.5th 1138, 1158 (2019). As Stencel notes and Lyft does not dispute, an employer

27   is held to have ratified an employee's conduct "where [the] employer fails to investigate or

28   respond to charges that an employee committed an intentional tort, such as assault or

11

1    battery." (See Pl.'s Opp'n. at 15:11–14 citing Thomas v. Regents of the Univ. of Cal., 97

2    Cal. App.5th 587, 618–619 (2023).)

3            Here, although Stencel alleges Lyft "failed to respond adequately to reports of

4    sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to

5    report sexual misconduct to law enforcement, and reinstated drivers after complaints of

6    sexual misconduct" (see FAC ¶ 236), she includes no such allegations particular to her

7    assault or driver. In the absence of such allegations, Stencel has failed to plead

8    ratification under California law. Cf. C.R. v. Tenet Healthcare Corp., 169 Cal.App.4th

9    1094, 1112 (2009) (finding allegations that "defendant, with knowledge of [employee's]

10   misconduct, continued to employ him and destroyed documents was sufficient to state a

11   claim that it ratified his sexual misconduct").

12           Accordingly, no conflict existing between Arizona and California law on the issue

13   of ratification, California law applies, and, consequently, to the extent Stencel's vicarious

14   liability claim is based on a theory of ratification, her claim is subject to dismissal.

15       **C. Negligence**

16           Lastly, Lyft seeks dismissal of Stencel's claim for negligent hiring, supervision,

17   retention, and entrustment. (See FAC ¶¶ 150–155; Def.'s Mot. at 11:3.) In support

18   thereof, Lyft argues, and Stencel does not dispute, that Arizona law and California law

19   are identical with regard Stencel's negligence claim, and, consequently, the Court applies

20   California law. See Textron Inc., 45 Cal.App.5th at 755 (noting California will "apply its

21   own rules of decision" where party fails to show laws are "materially differ[ent]").

22           In California, "an employer can be held liable for negligent hiring if he knows the

23   employee is unfit, or has reason to believe the employee is unfit or fails to use

24   reasonable care to discover the employee's unfitness before hiring him." See Juarez v.

25   Boy Scouts of Am., Inc., 81 Cal.App.4th 377, 395 (2000), rev'd. on other grounds by

26   Brown v. USA Taekwondo, 11 Cal.5th 204 (2021). Where, however, "there [is] nothing in

27   [the employee's] background and nothing that [is] made known to [the employer] during

28   [the employee's] tenure . . . that could be deemed a specific warning" of the employee's

United States District Court
Northern District of California

United States District Court
Northern District of California

1   conduct, liability cannot attach. See Juarez, 81 Cal. App.4th at 397; see, e.g. Doe v. Uber

2   Techs., 184 F.Supp.3d at 778–779 (dismissing claim for negligent hiring where plaintiff

3   did "not allege anything that existed in [driver's] background that . . . should have

4   prevented . . . approval").

5           Here, Lyft argues Stencel's negligence claim fails because she alleges nothing in

6   the Lyft driver's background or during his employment to suggest Lyft was negligent in

7   either hiring or retaining him prior to his alleged assault on Stencel. (See Def.'s Mot. at

8   12:21–27.)  Stencel makes no argument in response thereto, and the Court finds no

9   allegations in Stencel's complaint making the requisite showing.

10          Accordingly, Stencel's negligence claim, to the extent it is based on the negligent

11  hiring, supervision, retention, and entrustment of Stencel's assailant, is subject to

12  dismissal.[4]

### CONCLUSION

14          For the reasons stated above, Lyft's motion to dismiss is hereby GRANTED. As

15  Stencel may be able to cure the above-discussed deficiencies, she is hereby afforded

16  leave to amend. Stencel Second Amended Complaint, if any, shall be filed no later than

17  October 1, 2024.

19          **IT IS SO ORDERED.**

21  Dated: August 29, 2024

MAXINE M. CHESNEY
United States District Judge

---

26  [4] To the extent Stencel appears to base her negligence claim on Lyft's failure to train and monitor its drivers as a group, such claim is not subject to dismissal, as Stencel has alleged facts to support a finding that Lyft had knowledge of numerous past sexual assaults (see FAC ¶¶ 111, 123–124) and failed to adopt available procedures to reduce that risk (see id. ¶ 110).

13